*In re* DAVID CALDERÓN MARRERO, querellado.

*Número:* CE-86-284 *Resuelto:* 2 de noviembre de 1988

*Héctor Lugo Bougal, Nora L. Rodríguez Matías, Roberto Busó Aboy* y *Jesús R. Morales Cordero*, por el Colegio de Abogados de Puerto Rico, querellante; *Mario A. Rodríguez*, abogado del querellado; *Hon. Ángel F. Rossy García*, Comisionado Especial.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

La decisión de la presente querella disciplinaria está ineludiblemente enraizada en los conceptos del honor y de la dignidad, virtudes que aspiramos colectivamente a exaltar —a modo de prestigio ejemplarizante— entre los profesionales del derecho. "El honor o el deshonor propio se transmite a todo el cuerpo, como por vasos comunicantes." R.H. Viñas, *Ética y derecho de la abogacía y procuración*, Buenos Aires, Ed. Pannedille, 1972, pág. 132. En su proyección final axiológica, su adjudicación representa nuestro esfuerzo en mantener el *honor* en su doble dimensión —personal y comunitaria— del cual "una parte parece afectar a lo más interno de nuestra personalidad; un agravio al honor es como una lesión a lo más propio e intransferible del individuo. El sonrojo en que se manifiesta la sensación del agraviado, se diría que trasluce una herida íntima, con interior derramamiento de sangre. Pero, por otra parte, parece venir de los otros; el honor nos aparece, a un tiempo, como con exigencia y una consagración social, y la honra consiste en reconocimiento que los otros nos otorgan o tributan". García Valdecasas, citado en L. Legaz y Lacombra, *El Derecho y el Amor*, Barcelona, Ed. Bosch, 1976, pág. 97.

## I

El 5 de octubre de 1984 la Lic. Crisanta González de Rodríguez presentó ante este Foro una queja jurada contra el Lic. David Calderón Marrero por alegada conducta antiética (MC-84-49). En síntesis, expuso que el 1ro de septiembre de 1984 —en ocasión de la Asamblea del Colegio de Abogados— "fue 'víctima de [alegada] conducta inmoral, impúdica y grosera, observada por el Lcdo. David Calderón [Marrero] . . . sin mediar provocación alguna . . . ni existir justificación que excuse la conducta mencionada'". Informe de Conducta Profesional, pág. 1. Concedimos al licenciado Calderón Marrero término para que compareciera a mostrar causas por las cuales no debería ser disciplinado.

Oportunamente éste, por derecho propio, negó las alegaciones básicas y solicitó su archivo. Referimos el asunto al Procurador General, quien —por sí y con el endoso del Secretario de Justicia, Lic. Héctor Rivera Cruz— pidió que se relevara a su oficina de esa encomienda "en aras de la pureza de los procedimientos y en evitación de cualquier duda o a[u]n apariencia de posible prejuicio en la evaluación y recomendación". (Énfasis en el original.) Moción del Procurador General de 8 de febrero de 1985, pág. 2. Accedimos. Como mecanismo alterno encomendamos al Colegio de Abogados investigar e informarnos al respecto.

Oportunamente, la Comisión de Ética del Colegio de Abogados celebró vistas, a las cuales asistieron las partes y sus abogados. La prueba consistió de los testimonios de la Lic. Crisanta González de Rodríguez, del Lic. David Calderón Marrero y de la Lic. Amari Arabía. Se sometieron en evidencia varios documentos.[1]

---

[1] Proyecto de Denuncia de 17 de septiembre de 1984 (Querella Núm. 84-1-366-09067); declaración jurada suscrita por la Lic. Crisanta González de Rodríguez el 20 de septiembre de 1984 ante el notario Juan R. Melecio; copia de un escrito de presentación de excusas dirigida a la Lic. Crisanta González de Rodrí-

Presentado el Informe sobre Conducta Profesional de la Comisión de Ética del Colegio de Abogados —junto con la transcripción y prueba documental— concedimos término al licenciado Calderón Marrero para que mostrara causas por las cuales el asunto no debería quedar sometido a base de dicho informe y ser disciplinado.

Calderón Marrero descartó esa senda. Esta vez cuestionó las determinaciones del Informe de la Comisión de Ética del Colegio de Abogados y reiteró su súplica de que se archivara la queja. Así las cosas, la Juez Asociada Señora Naveira de Rodón dictaminó la existencia de causa probable para formular *querella* formal en su contra. Se ordenó al Colegio de Abogados que la presentara conforme la Regla 13(g) de nuestro reglamento, 4 L.P.R.A. Ap. I-A. Nuevamente contestó y negó los hechos. Mediante resolución, designamos Comisionado Especial al Juez Superior Hon. Ángel F. Rossy.

## II

Subsiguientemente éste rindió su informe,[2] del cual reproducimos las siguientes determinaciones de hecho:

---

guez, firmado por el Lic. David Calderón Marrero el 20 de septiembre de 1984, y recorte del periódico *El Vocero* del viernes 21 de septiembre de 1984.

[2] Las vistas ante el Comisionado Especial se celebraron los días 18 y 19 de febrero de 1988. Se estipuló la admisibilidad de la transcripción del testimonio aportado por la Lic. Crisanta González de Rodríguez ante la Comisión de Ética del Colegio de Abogados en sustitución a su testimonio oral, incluso el contrainterrogatorio. Además, fueron admitidos los documentos antes aludidos en el anterior escolio.

Por su parte, el Lic. Mario Rodríguez, abogado del querellado Calderón Marrero, informó que éste quería expresar y consignar —con relación al incidente que motivó la querella— su expresión formal de arrepentimiento por cualquier manifestación, gesto o actuación que en alguna forma hubiese ofendido la sensibilidad y dignidad de la licenciada González de Rodríguez, siendo firme su compromiso con ella y con todos los presentes que esa conducta no se repetiría en el futuro. Esta excusa se la hizo extensiva al Lic. Romualdo Rodríguez, esposo de la quejosa.

Bajo juramento, el licenciado Calderón Marrero ratificó tales expresiones y otra vez extendió sus excusas a ambos. Además, declaró en torno a sus ejecutorias personales y profesionales, en particular, haber servido honrosamente en el

El día 1ro de septiembre de 1984 se celebró en el Centro de Convenciones la Asamblea Anual del Colegio de Abogados de Puerto Rico. A la misma asistió la Lcda. Crisanta González de Rodríguez acompañada de su esposo, Lcdo. Romualdo Rodríguez. También asistió el querellado, Lcdo. David Calderón Marrero, quien para entonces ocupaba el cargo de Fiscal General en el Departamento de Justicia, desempeñándose como jefe de fiscales.

Habiendo conclu[i]do los trabajos de la mañana se decretó un receso para concluir las votaciones y para el almuerzo. Durante el receso decretado y luego de almorzar y haber emitido su voto, la querellante retornó al salón de asamblea y se sentó en el lugar que había ocupado durante la sesión de la mañana, segunda fila de la sección del centro del auditorio, frente a la mesa presidencial. Mientras allí se encontraba esperando a su esposo levantó la vista y miró hacia el lado izquierdo observando al Lcdo. David Calderón Marrero, quien estaba en unión a otras personas y la estaba mirando fijamente. Observó entonces que el querellado hizo un gesto con la cabeza y profirió las palabras: "hija de la gran puta". Al observar tal expresión se extrañó y miró a su alrededor pensando que tal expresión iba dirigida a otra persona. Al percatarse que no había nadie a su alrededor volvió su mirada nuevamente al querellado, quien entonces se tocó el área genital y dijo: "para tí y tu marido". En ese momento la querellante se levantó y se dirigió hacia el Lcdo. David Calderón Marrero para requerirle una explicación. Al llegar donde se encontraba el querellado le preguntó "¿Por qué usted me está haciendo esos gestos a mí?" El querellado entonces, quien tenía un vaso en la mano y el rostro y los ojos enrojecidos, le manoteó en la cara con las dos manos y le preguntó hablando en voz alta: "¿qué tiene usted que estarme mirando a mí?" "¿por qué usted me está mirando a mí?". Ante la actitud agresiva del que-

---

ejército por ocho (8) años; haber prestado servicios en el Departamento de Instrucción Pública por cuatro (4) años mientras se preparaba para su carrera de abogado; haberse desempeñado durante catorce (14) años como Fiscal General Especial en el Departamento de Justicia, donde mantuvo una conducta intachable en su condición de abogado-fiscal, y que nunca había sido objeto de intervención ni querella ante el Departamento de Justicia, la Oficina del Procurador ni este Foro.

rellado la querellante decidió retirarse por el temor de que su esposo pudiera enterarse y surgiera algún incidente desagradable. En ese momento entraba al salón la Lcda. Ama[ri] Arabía, a quien le contó lo sucedido. Posteriormente entró su esposo al salón y ella se sentó junto a él sin comunicarle nada de lo acontecido.

Luego del incidente y al iniciarse los trabajos de la tarde el querellado se sentó una fila detrás de la que ocupaba la querellante con su esposo, en la sección que se encontraba a su izquierda. Durante la [s]esión de la tarde el querellado no intervino en forma alguna con la querellante o su esposo.

El lunes siguiente, día 3 de septiembre de 1984, la querellante preparó un memorando en relación con el incidente dirigido a su jefe, Lcdo. Héctor Rivera Cruz. También le informó ese mismo día lo acontecido mediante comunicación telefónica. El martes 4 de septiembre de 1984 la querellante puso a su esposo en conocimiento del incidente. Al día siguiente en horas de la tarde se personó al Cuartel de la Policía localizado en la Calle Loíza para formalizar una querella en contra del Lcdo. David Calderón Marrero. En el Cuartel fue atendida por el Sargento Cotto, quien la citó para comparecer el día 12 de septiembre de 1984 a la Sala de Investigaciones del Centro Judicial de San Juan. El día asignado para la vista sobre determinación de causa probable se encontraba el Sargento Cotto y el Lcdo. Calderón Marrero, quien estaba acompañado por el Lcdo. Joaquín Monserrate Matienzo. En esa ocasión el Lcdo. Monserrate Matienzo se dirigió a la querellante con propósitos conciliatorios y para explorar la posibilidad de que se retiraran los cargos luego de que el Lcdo. David Calderón Marrero le presentara excusas. Luego de una serie de conversaciones donde intervinieron diferentes personas se sometió finalmente el caso ante la Hon. Juez Luzgarda Vázquez. Luego de una reunión inicial la Juez Vázquez suspendió la vista y la transfirió para el 20 de septiembre de 1984.

En ocasión de la segunda vista compareció la querellante representada por el Lcdo. Enrique González. El querellado asistió representado por el Lcdo. Elí B. Arroyo. Antes de entrar a la vista el Lcdo. Arroyo se le acercó a la querellante para ofrecerle excusas a nombre de su representado, las que estarían condicionadas a que la querellante solicitara el ar-

chivo de los cargos. También intervinieron un grupo de abogados, entre ellos el Lcdo. Benicio Sánchez, el Lcdo. Teodoro Méndez y el Lcdo. Wilfredo Figueroa, quienes se dirigieron a la querellante expresándole que estaban interviniendo no en capacidad de abogados sino en calidad de componedores. La excusa que habría de ofrecerle el querellado a la querellante quedó consignada en un escrito que fue firmado por el querellado y que lee como sigue:

Cualquier manifestación, gesto o actuación de mi parte que en alguna forma haya ofendido su sensibilidad no fue intencionada pero le pido excusas ya que en forma alguna fue mi intención ofender o en manera alguna causar malestar a la colega.

San Juan, Puerto Rico, 20 de septiembre de 1984.

David Calderón Marrero.

Al llamarse el caso para vista la querellante expresó que estaba en disposición de solicitar el archivo de los cargos siempre que la declaración jurada que ella había prestado en relación con el incidente y la excusa escrita firmada por el querellado se hicieran formar parte del expediente. Sometidos como fueron dichos documentos la Hon. Juez Luzgarda Vázquez expresó que habría de recibir los mismos en "carácter privado" pero no los haría formar parte del expediente, que constaría s[ó]lo de la denuncia. En la hoja de denuncia la Juez marcó el encasillado "no hubo causa probable". No obstante hizo constar a instancias de la querellante lo siguiente: "sometieron declaración jurada y escrito a puño y letra del acusado y se dan por retirados los cargos criminales". Al concluir la vista y salir de la Sala de Investigaciones el Lcdo. David Calderón Marrero le extendió su mano a la Lcda. Crisanta González de Rodríguez y a su abogado, Lcdo. Enrique González, luego de lo cual todos abandonaron el Tribunal.

Al día siguiente la querellante escuchó la voz del querellado por una emisora de radio, Noti-Uno, *informando que la Juez que había intervenido en la vista de la denuncia promovida por la querellante había determinado no causa en el proceso por no haber cre[í]do la versión de la querellante.* Ante estas expresiones del Lcdo. David Calderón Marrero la Lcda. González procedió a querellarse ante el Hon. Tribunal Supremo de Puerto Rico.

Debemos en esta etapa consignar que el querellado, por sus actos y expresiones en corte abierta, *reconoció su falta, mostró arrepentimiento y dejó constancia de su firme compromiso de no incurrir en el futuro en conducta como la que dio base a la querella que nos ocupa.* (Énfasis suplido.) Informe del Comisionado, págs. 5–9.

En virtud de estos hechos, el Comisionado Especial —luego de invocar nuestras decisiones en *In re Roldán González*, 105 D.P.R. 498 (1976); *In re Roldán Figueroa*, 106 D.P.R. 4 (1977), y los principios del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, referentes a la obligación de todo abogado de preservar el honor y la dignidad de la profesión y la responsabilidad ineludible de mantener y fomentar la sana relación entre los mismos— concluyó probados los hechos y "que la conducta y proceder del Lcdo. David Calderón Marrero para con la querellante es . . . censurable y constituye conducta antiética reñida con las disposiciones del Código de Ética antes indicadas". Informe del Comisionado, pág. 10. A renglón seguido añadió:

Consideramos no obstante que en el descargo de la responsabilidad de reglamentar la práctica de la profesión y disciplinar a los abogados que incurran en prácticas o conducta reñida con los Cánones de [É]tica, exclusiva del Tribunal Supremo, debe considerarse que el incidente que motivó la radicación de la querella que nos ocupa *fue un episodio aislado en la vida profesional del querellado por el cual éste, en corte abierta en ocasión de la vista en su fondo, hizo expresión de total arrepentimiento, extendió excusas a los agraviados* y dejó constancia de su firme propósito y compromiso de no incurrir nuevamente en conducta como la que dio base a la querella que nos ocupa. Es de rigor también apuntar que durante los años en que el querellado ha ejercido la profesión de abogado y, en particular, durante los 14 años en que se ha desempeñado como Fiscal en el Departamento de Justicia, nunca antes había sido objeto de intervención ni querella ante el Departamento de Justicia, la Oficina del Procurador ni ante el Hon. Tribunal Supremo. (Énfasis suplido.) Informe del Comisionado, págs. 10–11.

## III

Notificado del informe, el querellado Calderón Marrero objetó la conclusión de que hubiera proferido las palabras obscenas antes consignadas. Adujo que el mismo no exponía cabalmente su total ausencia de motivación. Tampoco que, por sus expresiones y explicaciones, ameritara una reprimenda o amonestación. Finalmente señaló que, bajo juramento, había ratificado su testimonio previo y nunca había estado involucrado o había sido objeto de querella ética en ningún foro.

En cuanto a su primera objeción, no tiene razón. Del testimonio integral de la querellante González de Rodríguez —cuya totalidad fue estipulada— se desprende el uso del lenguaje obsceno y gestos ofensivos e hirientes. T.E., págs. 14 y 45–46. Sobre los móviles de su conducta, la prueba razonablemente revela que existió *animus iniuriandi*, resultado de la atmósfera total creada en cuanto a serias desavenencias y discrepancias entre colegiados en torno a ciertos asuntos planteados en la Asamblea del Colegio de Abogados, y a la posición activa de la licenciada González de Rodríguez que se desempeñaba en la Unidad de Investigaciones Legislativas, a la sazón dirigida por el licenciado Rivera Cruz. Respecto a los restantes reparos, las determinaciones del Comisionado transcritas *verbatim* demuestran que fueron adecuadamente adjudicados.

Despejada toda duda en cuanto a la ocurrencia de los hechos, concentrémonos en la disposición de la querella. Lo primero que surge es que desde comienzos de este angustioso drama —durante el transcurso de la queja y luego de formulada formalmente la querella— el licenciado Calderón Marrero ha exhibido una postura ambivalente: negar los hechos a la par que pedir excusas por su comportamiento. Únicamente en las postrimerías del proceso es que, *sin vacilaciones*, al decir del Comisionado "en corte abierta en ocasión de la vista en su fondo, hizo expresión de total arrepenti-

miento, extendió excusas a los agraviados y dejó constancia de su firme propósito y compromiso de no incurrir nuevamente en [esa] conducta . . .". Informe del Comisionado, pág. 11. Nos aventuramos a pensar que, quizás, si hubiese asumido sin ambages esa posición desde el primer momento, la cuestión se hubiese resuelto satisfactoriamente para todos los protagonistas y no hubiese arribado a este Foro. Después de todo, errar es humano, pero perdonar es divino.

 Los hechos probados, que dan margen a la querella, ocurridos en una actividad propia al ejercicio de la abogacía, si bien aislados, ameritan ser sancionados disciplinariamente. La dignidad y la honorabilidad son valores deontológicos cuya omnipresencia se extiende al abogado como profesional en sus distintas funciones. "La preservación del honor y la dignidad de la profesión y la buena relación entre compañeros es *responsabilidad ineludible de todo*[s y conlleva el] observar con sus compañeros una actitud respetuosa, sincera, honrada y de cordialidad y cooperación profesional, velando siempre por el buen ejercicio de la profesión legal." (Énfasis suplido.) *Código de Ética Profesional*, 99 D.P.R. 1002, 1017–1018 (1970). La consecución de esos propósitos exige de todos autolimitación, tolerancia, prudencia y "esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia". Íd., pág. 1023.

 Es axiomático que entre los abogados exista fraternidad y respeto mutuo que enaltezca la profesión, sin que influya y nuble el entendimiento la animadversión de las partes o las resultantes de posiciones antagónicas en las diversas funciones y cargos del quehacer jurídico. En el terreno de las relaciones profesionales habituales entre colegas, toda conducta malévola o injuriosa está proscrita.

■ El querellado Calderón Marrero infringió lamentablemente las normas éticas apuntadas. Amerita nuestra más enérgica censura y condena. Únicamente su previo historial, el carácter aislado del incidente y, a la postre, su genuino arrepentimiento nos mueven a limitarla a una suspensión del ejercicio de la práctica profesional por el término de treinta (30) días.

*Se dictará la correspondiente sentencia.*

El Juez Presidente Señor Pons Núñez se inhibió. El Juez Asociado Señor Rebollo López no intervino. La Juez Asociada Señora Naveira de Rodón se inhibió.