*In re* LUIS A. SÁNCHEZ RODRÍGUEZ, querellado.

*Número:* AB-88-24      *Resuelto:* 20 de junio de 1989

*Néstor Hernández Pérez*, querellante, *pro se*; *Manuel Fermín Arraiza*, abogado del querellado.

PER CURIAM: El 13 de agosto de 1988 el Lcdo. Néstor Hernández Pérez presentó ante este Tribunal una querella contra el Lcdo. Luis A. Sánchez Rodríguez, imputándole a este último que indujo a error al Tribunal Superior, Sala de Arecibo, y por consiguiente, obtuvo sanciones contra él y su cliente.

Oportunamente, dimos término al Lcdo. Luis A. Sánchez Rodríguez para que mostrara causa por la cual no debía ser sometido a acción disciplinaria. El querellado ha comparecido.

I

El querellante representaba la parte demandante en el Caso Civil Núm. CS-86-1950, *Pedro Vargas Sánchez, et als.*

*v. Carlos Bolet Álvarez*, en una acción sobre daños y perjuicios. A petición del querellante, la Hon. Juez Berta Mainardi Peralta del Tribunal Superior, Sala de Arecibo, le concedió a la parte demandante treinta (30) días para hacer descubrimiento de prueba.

Luego de varios incidentes procesales, la vista del caso en su fondo fue señalada inicialmente para el 17 de mayo de 1988 por acuerdo de los dos (2) abogados y de la juez Mainardi Peralta.

Posteriormente, la juez Mainardi Peralta reseñaló la vista en su fondo para el 20 de septiembre de 1988 a las 10:00 A.M., indicándolo así *personalmente en corte abierta a ambos abogados.*

Debido a un error administrativo del tribunal de instancia, el 17 de mayo de 1988 se llamó el caso de autos para la vista en su fondo, señalamiento que no había sido notificado al querellante. El Lcdo. Luis A. Sánchez compareció a dicha vista indicándole al tribunal que estaba listo para ver el caso en su fondo, cosa que éste hizo. Ante la incomparecencia del querellante, el tribunal le impuso la cantidad de trescientos dólares ($300) de sanción a favor del Lcdo. Luis A. Sánchez. Además, en dicha vista el Lcdo. Luis A. Sánchez presentó una moción (en corte abierta) solicitando se le eliminaran las alegaciones al codemandante Pedro Vargas Sánchez, a lo cual el tribunal accedió. La vista del caso fue celebrada ante el Hon. Juez Juan A. Melecio, quien desconocía el error cometido al incluir en el calendario del tribunal el caso para verse dicho día y el reseñalamiento para el 20 de septiembre de 1988 hecho por la juez Mainardi. El Lcdo. Luis A. Sánchez no informó al juez Melecio de dicho reseñalamiento.

El querellante, al enterarse de la sanción impuesta, le planteó a la juez Mainardi la situación y ésta informó al juez Melecio de la misma, lo que motivó que éste dejara sin efecto todas las órdenes y decisiones dictadas en la vista celebrada el 17 de mayo de 1988.

El licenciado Sánchez, en su comparecencia ante nos, expresó que la vista del caso había sido señalada para el 17 de mayo a las 10:00 A.M. y que el reseñalamiento para el 20 de septiembre no fue notificado por el tribunal hasta el 1ro de junio, por lo que compareció al tribunal el 17 de mayo sin el beneficio de la minuta enmendada de la juez Mainardi. Admite, sin embargo, que la fecha de 20 de septiembre de 1988 había sido acordada por ambos abogados en presencia de la juez Mainardi.

El querellado señala, además, que el 4 de abril de 1988 anotó en su calendario el reseñalamiento para el 20 de septiembre del mismo año, pero que omitió tachar el que había hecho anteriormente para el 17 de mayo de 1988. Explica que no informó al juez Melecio del reseñalamiento por no recordarlo, por tener la vista de 17 de mayo todavía en su calendario y por estar el expediente del caso en sala y el caso en el calendario de ese día.

El querellado sostiene que no hubo premeditación ni intención reprobable en ese doloroso suceso, y que fue un error de su parte por no haber tachado ese señalamiento que se dejó sin efecto. Nos informa, además, que fue un "error de omisión sin mala fe". Testimonio jurado, pág. 1.

Explica que su omisión de informar al juez Melecio sobre el reseñalamiento del caso fue debido al gran cúmulo de casos que tenía en los tribunales en esos días. Por último, sostiene que no se ha causado daño personal ni pecuniario a nadie.

## II

■ Los abogados son profesionales.[1] Por serlo, se requiere que desempeñen sus funciones con el mayor grado de

---

[1] "Urge reivindicar el concepto de Abogado. Tal cual hoy se entiende, los que en verdad lo somos, participamos de honores que no nos corresponden y de vergüenzas que no nos afectan." A. Ossorio y Gallardo, *El abogado: el alma de la toga*, Buenos Aires, Eds. Jurídicas Europa-América, 1956, pág. 17.

competencia, responsabilidad e integridad. Ello no sólo debe pregonarse, sino hacerse de día a día con voluntad y verticalidad, utilizando al máximo el intelecto, la preparación y la dedicación de su ministerio. Lo anterior conlleva cultivar la sensibilidad, la franca y enriquecedora comunicación seria, digna y edificante, así como una sana convivencia. La profesión legal debe ser ejemplo para la sociedad de estas cualidades y valores humanos. Corresponde al abogado esa tarea de exaltar el honor y la dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales. Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX; *In re Roldán Figueroa*, 106 D.P.R. 4, 12 (1977); *In re Ríos Lugo*, 119 D.P.R. 568 (1987).

■ Los cánones de ética profesional le imponen al abogado unas responsabilidades profesionales para con la sociedad, los tribunales, sus clientes, sus compañeros y su profesión. Véase Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Estas responsabilidades profesionales no deben ser menoscabadas por el quehacer diario o por el ambiente social y valorativo dentro y alrededor del cual se desenvuelven los abogados.

■ La buena marcha del proceso judicial del país es responsabilidad ineludible de todo miembro de la profesión legal. *Deberes del abogado para con los tribunales, Criterio general*, Código de Ética Profesional, 4 L.P.R.A. Ap. IX. La preservación del honor, la dignidad y *la buena relación entre compañeros* es también responsabilidad ineludible de todo miembro de la profesión legal y, para ello, todo abogado debe observar con sus compañeros una actitud respetuosa, sincera, honrada, de cordialidad y de cooperación profesional, velando siempre por el buen ejercicio de la profesión legal. *Deberes del abogado en relación con sus compañeros y su profesión, Criterio general*, Código de Ética Profesional, 4

L.P.R.A. Ap. IX; *In re Roldán González*, 105 D.P.R. 498 (1976). Como expresamos en *In re Calderón Marrero*, 122 D.P.R. 557, 566 (1988):

Es axiomático que entre los abogados exista fraternidad y respeto mutuo que enaltezca la profesión, sin que influya y nuble el entendimiento la animadversión de las partes o las resultantes de posiciones antagónicas en las diversas funciones y cargos del quehacer jurídico. *En el terreno de las relaciones profesionales habituales entre colegas, toda conducta malévola o injuriosa está proscrita.* (Énfasis suplido.)

Por otra parte, no se es sincero ni honrado cuando se utilizan medios que sean incompatibles con la verdad o se induce *a error* al juzgador, utilizando como artificio una falsa relación de hechos o de derecho. Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Como expresamos en *In re Ramos y Ferrer*, 115 D.P.R. 409, 412 (1984), "[j]ugar al esconder con la justicia, que es jugar al esconder con la verdad, es práctica deleznable" de los abogados. Por otra parte, en su conducta como funcionario del tribunal deberá interesarse en hacer su propia y cabal aportación hacia la consecución de la mejor administración de la justicia —Canon 38 del Código de Ética Profesional, *supra; In re Vázquez Báez*, 110 D.P.R. 628, 635 (1981); *In re Ramos y Ferrer*, supra; *Reyes v. Jusino*, 116 D.P.R. 275 (1985); *In re Cardona Álvarez*, 116 D.P.R. 895, 903 (1986)— y observar en su práctica el "juego limpio" y no el subterfugio. *Cf. Neptune Packing Corp. v. Wackenhut Corp.*, 120 D.P.R. 283 (1988); *Berríos v. U.P.R.*, 116 D.P.R. 88, 91 (1985).

### III

En el caso de autos, el reseñalamiento de la vista del caso en su fondo para el 20 de septiembre de 1988 a las 10:00 A.M. *le fue indicado por la juez Mainardi personalmente y en corte abierta a ambos abogados*, por lo que al Lcdo. Luis A. Sánchez le constaba de propio conocimiento tal hecho. Así

lo admite en su contestación ante nos. Constándole lo anterior, sabía que la vista celebrada el 17 de mayo de 1988 era un error administrativo. El Lcdo. Luis A. Sánchez compareció a dicha vista y le indicó al tribunal que estaba listo para ver el caso en su fondo, aunque su compañero no había comparecido, sabiendo que la vista había sido señalada para el 20 de septiembre de 1988. El Lcdo. Luis A. Sánchez no trajo a la atención del tribunal este error,[2] sino que, por el contrario, le indicó que estaba listo para ver el caso en su fondo y, además, solicitó del tribunal que le impusiera la cantidad de trescientos ($300) de sanción a su compañero a su favor. Fue más allá, y solicitó que se le eliminaran las alegaciones a la parte contraria y cliente de su colega.

No cabe duda de que el Lcdo. Luis A. Sánchez se aprovechó de la situación de que su compañero, abogado de la otra parte, no estaba presente en la vista que había sido señalada por un error administrativo. Muy bien pudo haber llamado la atención del tribunal sobre el error, solicitado al tribunal que llamaran a su compañero abogado a la oficina para ver por qué no había comparecido o tomado otras medidas que propendieran a establecer las buenas relaciones que debe llevar a cabo un abogado con el tribunal y con sus compañeros de profesión.

■ Su explicación de que compareció el 17 de mayo sin beneficio de la minuta enmendada de la juez Mainardi y de que había olvidado tachar en su calendario el señalamiento para el 17 de mayo de 1988, no nos satisface. Tampoco de que no le informó al juez Melecio sobre el reseñalamiento por no recordarlo, así como que tenía un gran cúmulo de casos en los tribunales en esos días. La conducta del licenciado Sán-

---

(2) "La mentira degrada el carácter y envilece el espíritu y es antítesis de la conducta recta y honorable que el Código de Ética Profesional exige de todo abogado." *In re Ramos y Ferrer*, 115 D.P.R. 409, 412 (1984).

chez Rodríguez merece nuestra más enérgica censura. Su conducta, al tratar de sacar ventaja de errores administrativos, de inducir a error al tribunal y de agraviar a un compañero ausente y a una parte indefensa, no adelanta la causa de la justicia, la buena práctica de la profesión ni la buena administración de los tribunales.

Los abogados, como profesionales que son, deben ser los primeros en dar el ejemplo sobre los mayores valores de crítica, respeto al prójimo y sana convivencia. La llamada "jungla legal", donde la práctica imperante sea "salvarse quien pueda y no importa a costa de qué", no puede ser la descripción adecuada de la práctica de la profesión legal ni la norma para ejercerla y enaltecerla. Hay valores profesionales y humanos que imponen una conducta radicalmente distinta.

El licenciado Sánchez señala que no se causaron daños personales ni pecuniarios a nadie, que no hubo premeditación ni intención reprobable en ese doloroso suceso y que fue un error de su parte no haber tachado de su calendario el señalamiento que se dejó sin efecto. Admite que fue un error de omisión sin mala fe. El récord demuestra lo contrario. El Lcdo. Luis A. Sánchez fue admitido al ejercicio de la abogacía el 21 de mayo de 1968. Su historial personal previo no muestra mácula que denote una desviación profesional irremediable de los cánones de ética. Pero, dadas las circunstancias particulares de este caso y en el ejercicio de nuestra función disciplinaria, lo suspendemos del ejercicio de la abogacía por el término de tres (3) meses.

*Se dictará la sentencia correspondiente.*

El Juez Presidente Señor Pons Núñez no intervino. Los Jueces Asociados Señores Negrón García y Hernández Denton no intervinieron.