*In re* VANESSA VERGNE TORRES y MANUEL ÁLVAREZ MELÉNDEZ, querellados.

*Número:* CP-89-565  *Resuelto:* 11 de enero de 1995

*Jorge E. Pérez Díaz, Anabelle Rodríguez, Procuradores Generales, Reina Colón de Rodríguez, Procuradora General Interina, Norma Cotti Cruz, Subprocuradora General,* e *Yvonne Casanova Pelosi, Procuradora General Auxiliar,* abogados de El Pueblo; *José L. Hidalgo Irizarry,* de *Cintrón Vázquez, Ferrer & Hidalgo,* abogados de los querellados.

PER CURIAM:

## I

El Procurador General de Puerto Rico presentó tres (3) informes relacionados con la conducta profesional de los abogados Vanessa Vergne Torres y Manuel Álvarez Meléndez.[1] El 22 de junio de 1989 los consolidamos y ordenamos incoar la querella correspondiente. En síntesis, se les imputó cuatro (4) cargos por infracciones al Canon 18 de Ética Profesional, 4 L.P.R.A. Ap. IX (obligación de ejercer en todo momento celo, cuidado y prudencia en la ges-

---

[1] Informe Núm. AB-88-36 contra ambos, que contenía tres (3) casos; Informe Núm. AB-89-37 contra la licenciada Vergne Torres, que contenía dos (2) casos; Informe Núm. AB-89-38 contra el licenciado Álvarez Meléndez, que contenía cinco (5) casos.

tión profesional); Canon 19 de Ética Profesional, 4 L.P.R.A. Ap. IX (mantener al cliente siempre informado; apartarse del *Criterio General* que obliga al abogado a tener hacia el cliente un trato profesional caracterizado por la mayor capacidad y la más devota lealtad y honradez), y el Canon 38 de Ética Profesional, 4 L.P.R.A. Ap. IX (obligación de preservar el honor y la dignidad de la profesión).

Inicialmente, los querellados contestaron en términos generales los casos que eran objeto del Informe Núm. AB-89-38 relativos al licenciado Álvarez Meléndez.[2] El 25 de octubre de 1991 contestaron los demás casos de las quejas Núm. AB-88-36[3] contra ambos abogados y la Núm. AB-89-37[4] contra la licenciada Vergne Torres.

---

[2] Referente al caso Núm. 4 —la queja de la Srta. María Ivette Ortiz— el licenciado Álvarez Meléndez admitió haber omitido informar su cambio de dirección a Arecibo y que no ejerció la mejor diligencia en sus gestiones profesionales. A juicio suyo, en consideración a su situación familiar, ese proceder sólo ameritaba una amonestación.

[3] En la queja de la Sra. Lydia Casañas, los querellados no negaron el cargo. Se limitaron a señalar que estaban en la disposición de entregar todos los documentos en la dirección de su antigua oficina localizada en la Calle Collins 635, Summit Hills, Río Piedras, Puerto Rico. Indicaron que habían solicitado una copia certificada al Inspector de Protocolos, quien tenía incautados los Protocolos de la licenciada Vergne, entonces suspendida de la notaría. Dichos documentos se presentarían al Registro de la Propiedad y podían ser recogidos con el testamento en la misma dirección.

Sobre los querellantes John y Ruth Zimmerman, la contestación tampoco negó el cargo. Sólo indicó que el hermano de la querellada Vergne Torres habría de devolver el dinero, lo cual no hizo, y señaló que ellos habrían de hacerlo después de verificar la dirección a remitir el pago.

El tercer caso, con relación al Sr. Antonio Ramos, no se contestó. Sobre la Sra. Ana Nolla Cabrera, la contestación alude a una Sra. Ana A. Valle, exponiendo que se obtuvo del Inspector de Protocolos una copia certificada de una escritura de cancelación de hipoteca y se presentó al Registro de la Propiedad. Los documentos y el boleto de presentación estarían a la disposición de los querellantes en la dirección antes indicada.

[4] La licenciada Vergne Torres negó en términos generales la queja Núm. AB-89-37. Indicó que estaba dispuesta a devolver cuarenta y cinco dólares ($45) del dinero entregado, luego de restarle el sello de radicación de veinte dólares ($20), y del emplazador de veinticinco dólares ($25). La querella alegaba que se adelantaron cien dólares ($100), no noventa dólares ($90).

En el caso Núm. 2, contestó que haría gestiones con el Inspector de Protocolos para obtener una copia certificada de la escritura de compraventa e inscribirla en el Registro de la Propiedad. No negó que mantuviera al cliente sin comunicación.

## II

Previa vista evidenciaria, el Comisionado Especial designado, ex Juez Superior Carlos M. Maldonado Casillas, rindió un informe detallado, en el cual consignó las Determinaciones de Hecho siguientes:([5])

(5) El Informe del Comisionado Especial de 19 de abril de 1994, págs. 3–5, expone, además:

"Al comienzo de la vista las partes informaron al Comisionado que los querellados habían realizado determinados actos encaminados a aminorar la posible sanción que el Tribunal pudiera en su día imponer a éstos en el caso; sujeto ello a posterior comprobación e Informe del Procurador General.

"En cuanto al caso número uno de la queja AB-88-36, se le indicó al Comisionado que la señora Casañas había manifestado no tener interés en que se inscribiera en el Registro su escritura, copia certificada de la cual ya se le había entregado. El Informe del Procurador General indica que dicha señora, en efecto, no tenía interés en que se presentara en el Registro una escritura de una propiedad en Fair View. No obstante, interesaba se presentara en el Registro una escritura de cancelación de pagaré hipotecario. Para obtener copia certificada de estas escrituras, la querellante tuvo que dirigirse al Inspector de Protocolos, teniendo que satisfacer los derechos correspondientes, así como los sellos de presentación de la escritura de cancelación de hipoteca, cuyos servicios ya había satisfecho a los querellados.

"En cuanto al caso número dos de la querella AB-88-36, referente a los señores Zimmerman, se le indicó al Comisionado que la licenciada Vergne testificaría que su hermano procedió a hacer la devolución de los honorarios cobrados indebidamente. El Informe del Procurador General indica que habiendo fallecido la señora Ruth Zimmerman hace aproximadamente un año, y habiendo fallecido anteriormente el esposo de ésta, el señor John Zimmerman, dicho caso quedaba sometido por el Informe original.

"En cuanto al caso número tres de la querella AB-88-36, indican los querellados que una vez iniciado este procedimiento se presentó en el Registro para su inscripción copia de la escritura de la señora Ana Nolla Cabrera, y así lo acepta el Procurador General. En cuanto al señor Antonio Ramos, también interesado en dicho caso, nada manifestaron los querellados, quedando el asunto sujeto a la dilucidación por el Tribunal.

"En lo que respecta al caso número uno de la querella AB-88-37 contra la licenciada Vergne Torres y referente a la señora María Figueroa, y en vista de la ausencia de Puerto Rico de dicha querellante, el caso de Procurador General quedó sometido por el Informe original.

"En cuanto al caso número dos de la querella AB-88-37, referente al señor Jacinto Ruiz Candelaria, se informó al Tribunal que en el mismo día de la vista estaban siendo presentadas las escrituras en el Registro de la Propiedad, Sección de Caguas, lo que fue comprobado en el Informe del Procurador General, de fecha 30 de enero de 1992, que incluyó, entre otros, copia de los referidos boletos de presentación.

"En cuanto al caso AB-89-38 contra el licenciado Álvarez Meléndez, se informó que en el caso número uno referente a la señora Ostolaza, y en vista de que ésta se encontraba fuera de Puerto Rico, el mismo se sometía por el expediente del Informe original del Procurador General.

"En cuanto al caso número dos referente al querellante Jorge Luis Fojo Mercado, el Informe del Procurador General, a que antes hemos hecho referencia, indica que el expediente del caso del Tribunal de Arecibo que el querellado Álvarez Melén-

1. El licenciado Manuel Álvarez Meléndez fue admïtido a la práctica de la abogacía el día 1ro de noviembre de 1978. Al presente se encuentra suspendido *indefinidamente* de la práctica de la abogacía mediante Opinión Per Curiam de 13 de diciembre de 1991 en el caso MC91-11.

2. La licenciada Vanessa Vergne Torres fue admitida a la práctica de la abogacía el día 7 de noviembre de 1979. Al presente se encuentra suspendida *indefinidamente* de la práctica de la notaría mediante Opinión Per Curiam de 27 de mayo de 1988, en el caso que aparece informado en el Tomo 121 de las Decisiones de Puerto Rico, a la página 500.

3. La licenciada Vergne Torres y el licenciado Álvarez Meléndez son casados entre sí y en todas las fechas que se indican en los casos contenidos en la querella practicaban la profesión de abogado en conjunto y mantenían una oficina localizada en la Calle Collins 635, de la Urb. Summit Hills de Río Piedras, Puerto Rico.

4. Los querellados estuvieron practicando la profesión activamente desde dichas oficinas durante los años de 1985 y 1986. Para mediados de 1987 los querellados comienzan a experimentar serias dificultades en el ámbito familiar a consecuencia de la condición que padecía el pequeño hijo de las partes que requería atención constante, que inicialmente la brindaba una persona encargada de ello y posteriormente tuvo que brindarla exclusivamente la querellada Vanessa Vergne Torres. Dicha situación se complica cuando la señora madre de la querellada Vergne, quien también estaba en condición precaria de salud, sufrió un accidente que requirió el traslado de los querellados a la ciudad de Arecibo para poder asistir directamente a la señora quien, a la sazón, vivía sola.

5. Al trasladarse a Arecibo los querellados *no tomaron las providencias mínimas de rigor para informar de la situación a sus clientes, quienes confrontaron grandes dificultades para poderse comunicar con éstos.* A pesar de que la querellada Vergne Torres manifestó que la oficina de la Calle Collins en Summit Hills tenía un contestador de teléfono, no indicó el texto del

---

dez retenía, le fue entregado al Procurador General para su posterior entrega al querellante.

"En lo que respecta al tercer caso referente a la señora Savignon, en vista de que esta querellante no ha podido ser localizada, se somete dicho caso con el Informe original del Procurador General.

"En lo que respecta al caso número cuatro referente a la señorita María Ivette Ortiz y al caso número cinco de esta queja referente a la querellante María M. Vega Paz, el querellado devolvió a cada una de ellas la suma de $200.00, según se comprueba en el Informe del Procurador General de 30 de enero de 1992, que contiene fotocopias de los 'money orders' número 06-0124 y 06-0125, por $200.00 cada uno, a favor de las respectivas querellantes."

mensaje contenido en dicho contestador, ni que el mismo señalara particularmente el paradero de los querellados donde podían ser localizados por sus clientes.

6.  Aunque la querellada, Vanessa Vergne Torres, era quien se dedicaba exclusivamente a la fase notarial y con mayor énfasis a la fase práctica de la profesión legal, cuando contrataban con clientes *no se aclaraba adecuadamente dicha situación · a éstos, quienes en muchas situaciones consideraron que habían contratado con el licenciado Álvarez Meléndez.*

La propia querellada declaró que los pagos mediante cheque efectuados por los clientes se hacían a nombre de su esposo, el licenciado Álvarez Meléndez, ya que ella prefería no manejar la cuenta de banco ni envolverse con dinero. *Esta situación, sin embargo, no se le aclaraba o explicaba a los clientes, quienes estaban totalmente ajenos a ella.*

7.  Cuando los querellados se trasladaron a Arecibo a vivir, *tampoco notificaron al Tribunal Supremo su cambio de dirección.*

8.  La *situación delicada de salud del hijo* de los querellados les requirió a éstos el pago de grandes sumas de dinero en gastos médicos que éstos proveyeron mediante préstamos y utilizando fondos entregados por los clientes para satisfacer determinados gastos, particularmente el de los derechos correspondientes a las presentación de documentos en el Registro de la Propiedad para ser inscrito, *lo que dio margen al incumplimiento por los querellados de los compromisos contraídos con sus clientes en ese respecto.* Luego de iniciados los trámites en esta querella y en otras quejas presentadas ante el Procurador General, *los querellados han devuelto a sus clientes las sumas adeudadas.* No obstante, para que ello ocurra ha sido preciso la intervención de las autoridades en el ámbito disciplinario.

9.  El querellado, Manuel Álvarez Meléndez, aunque presente en ambas vistas evidenciarias, optó por no testificar, descansando únicamente su defensa en el testimonio de la querellada Vanessa Vergne Torres.

## DETERMINACIONES DE HECHOS PARTICULARES

A.  *Informe de Conducta Profesional AB-86-36
Caso Número I*

1.  La señora Lydia Casañas contrató a los querellados para la autorización de tres escrituras. Satisfizo a éstos la suma de $666.50 para honorarios de abogado, gastos de sellos de Rentas

Internas e inscripción en el Registro de la Propiedad de dichas escrituras.

2. Se prepararon las escrituras pero no se presentaron al Registro según acordado.

3. Durante el transcurso de estos procedimientos la señora Casañas señaló que ya no interesaba la presentación al Registro de la Propiedad de la escritura en su casa de Fair View. No obstante, señaló que sí interesaba que se presentara en dicho Registro la escritura de cancelación de pagaré hipotecario.

4. La querellante tuvo que pagar al Inspector de Protocolos los sellos correspondientes para obtener copias certificadas de ambas escrituras y los sellos de presentación de la escritura de cancelación de hipoteca. Esto es así en vista de que la querellada Vanessa Vergne Torres, notario que preparó y otorgó los documentos, había sido suspendida indefinidamente de la práctica de la notaría desde el 27 de mayo de 1988, y manifestó que no tenía dinero para el pago correspondiente.

5. *El Comisionado considera probado este caso.*

*Caso Número II*

1. Los esposos John y Ruth Zimmerman contrataron a la querellada Vergne Torres para autorizar una escritura de compraventa y su posterior inscripción en el Registro, pagando la suma de $310.00 por concepto de honorarios de abogado y $296.50 para los sellos de inscripción de la escritura.

2. Al momento de presentar la escritura al Registro, los querellados habían dispuesto del dinero pagado para ese propósito y el señor Zimmerman volvió, a solicitud de los querellados, a aportar la suma de $296.50 para la inscripción. El querellado Álvarez Meléndez le otorgó un pagaré por dicha suma, a vencer en el término de sesenta (60) días, e incumplió con dicha obligación. Posteriormente el hermano de la querellada, doctor Raymond Vergne, quien era vecino de los Zimmerman en Estados Unidos, manifestó que habrían de devolver a éstos la suma representativa del segundo pago para la inscripción de la escritura de compraventa, desconociéndose si, en efecto, se llevó a cabo la devolución.

3. *El Comisionado considera probado este caso.*

*Caso Número III*

1. La querellada Vanessa Vergne Torres fue contratada por el señor Antonio Ramos y la tía política de éste, señora Ana

Nolla Cabrera, para que les autorizara una escritura de compraventa y otra de cancelación de hipoteca respectivamente.

2. Se hicieron por los querellantes pagos por $200.00 y $515.00, respectivamente, que fueron entregados al querellado Alvarez Meléndez.

3. El contrato con la señora Nolla Cabrera requería la otorgación de una escritura de cancelación de hipoteca, lo cual se hizo, y su presentación e inscripción en el Registro de la Propiedad.

4. No se cumplió con la presentación e inscripción en el Registro cuando se debía por razón de que el protocolo de la querellada Vergne Torres fue incautado a consecuencia de su suspensión de la notaría efectuada en 1988. La última escritura del protocolo de 1987 es precisamente la correspondiente a la señora Nolla Cabrera.

5. Al inquirirse de la querellada Vergne Torres la razón por la cual no se presentó prontamente la escritura de la señora Nolla, ésta manifestó que se debió a que no tenía dinero para presentarla.

6. El contrato con el señor Antonio Ramos requería la preparación de una escritura de compraventa de una propiedad que había adquirido de su señora madre, luego de fallecer el padre de éste. Se acordó por ello la suma $300.00, de los cuales Ramos adelantó $200.00. Para dicho otorgamiento era preciso gestionar y obtener por los querellados el pago o relevo de la contribución de herencia del Departamento de Hacienda y preparación de un poder a ser enviado a Estados Unidos donde se otorgaría para luego protocolizarlo en Puerto Rico, todo ello antes del otorgamiento de la referida escritura de compraventa. Los querellados prepararon la planilla de contribución sobre herencias y el poder a ser otorgado por una hermana del querellante señor Ramos.

7. Al otorgarse el poder y venir devuelto, ya la querellada Vergne Torres no era notario, por lo que estaba imposibilitada de protocolizarlo y continuar con las gestiones a que se había obligado.

8. Mientras esto ocurría, los querellados se habían trasladado a residir a Arecibo y el señor Ramos, luego de un número de gestiones, logró contacto con el querellado Álvarez Meléndez en la ciudad de Arecibo. Álvarez regresó temporeramente a San Juan, a la oficina de Summit Hills, e hizo entrega al querellante Ramos de su documentos, quien tuvo que emplear otro notario para la preparación y posterior inscripción en el Registro de la escritura de compraventa que había originalmente motivado su contratación de la querellada Vergne Torres. La

contratación de un nuevo notario conllevó para el querellante Ramos el pago de la suma adicional de $350.00.

9. Cuando inicialmente contrata con los querellados, el querellante Ramos entendía que la obligación de realizar el trabajo contratado correspondía al querellado Álvarez Meléndez, en vista de que la relación interna del funcionamiento de la oficina y división de trabajo acordada entre los querellados no le fue explicada en momento alguno.

10. *El Comisionado considera probado este caso.*

B. *Informe de Conducta [Profesional] AB-89-38*
*Caso Número I*

1. La querellante Odalis Ostolaza contrató al querellado Álvarez Meléndez para que le gestionara el arreglo de su crédito ante el Credit Bureau. Adelantó para ello la suma de $100.00, de $200.00 que habría de satisfacer por dichos servicios.

2. La querellada Vergne Torres declaró que la señora Ostolaza había sido cliente de la oficina previamente en un caso de divorcio, y que lo que la llevó nuevamente a buscar los servicios era el obtener una copia certificada de su sentencia de divorcio, en cuyo caso las partes habían hecho ciertas estipulaciones referentes al pago de deudas conyugales, que era lo que motivaba el perfil de crédito negativo de la querellante. Declaró también que fue ella la contratada.

3. No obstante, las gestiones ante el Credit Bureau las realizó el querellado Alvarez Meléndez, consistentes éstas en una reunión con un funcionario de dicha agencia y en la obtención de un perfil de crédito ("credit Profile") de la querellante. La gestión ante el Credit Bureau incluía la preparación y presentación de declaraciones juradas, a fin de que el perfil de crédito de la querellante reflejara que la información relacionada con determinadas deudas estaba en disputa. Esta parte de la gestión no se llevó a cabo.

4. En vista de que pasaba el tiempo sin que se solucionara el problema, la querellante acudió en varias ocasiones a las oficinas de los querellados a reclamar la devolución del dinero pagado, resultando infructuosas todas esas gestiones en vista de que los querellados no se encontraban en el lugar.

5. *El Comisionado considera probado este caso.*

*Caso Número II*

1. El querellado Álvarez Meléndez fue contratado por el señor Jorge Luis Fojo Mercado y el padre de éste, Luis Fojo Beltrán, para que le gestionara un contrato de arrendamiento de

un solar que éstos ocupaban en un sitio llamado La Poza del Obispo en Arecibo, donde explotaban un negocio de bebidas y comidas. Dicho solar pertenecía a la Autoridad de Puertos de Puerto Rico.

2. Los querellantes contrataron las gestiones y representación en la suma de $1,200.00, suma que fueron pagando según eran requeridos para ello por el querellado, llegando a satisfacer $1,000.00.

3. El querellado radicó en el Tribunal de Distrito de Arecibo una acción de consignación a favor de los querellantes, tratando de evitar el desahucio por parte del Municipio de Arecibo quien, a la sazón, cobraba la renta del solar. Esto se hizo mientras se hacían las gestiones correspondientes con la Autoridad de Puertos ya que, por investigación del querellado, se había determinado que era dicha agencia la verdadera dueña del terreno.

[4.] Habiendo una vista señalada en el Tribunal de Distrito de Arecibo para la dilucidación de uno de los incidentes de dicho caso, el querellado solicitó de los querellantes el pago de la suma de $500.00 adicionales, y al negarse éstos optó por no comparecer. Eventualmente, los querellantes obtuvieron nueva representación legal en dicho caso y requirieron al querellado la entrega de los expedientes, que incluían no sólo el caso de Arecibo, si que también toda la documentación relacionada con las gestiones frente a la Autoridad de Puertos, negándose el querellado a entregar dicho expediente, lo cual vino finalmente a realizar por orden del Comisionado emitida en la vista del 15 de enero de 1992, haciendo dicha entrega, según dispuesto, a través de la oficina del Procurador General.

[5.] *El Comisionado considera probado este caso.*

## Caso Número III

1. La querellante Josefina Savignon contrató al licenciado Álvarez Meléndez para que le representara en un caso ante el Comisionado de Seguros, donde se le había negado cubierta al esposo de la querellante por razón de una condición médica preexistente.

2. Se contrataron honorarios en la suma de $375.00, de los cuales la querellante adelantó la suma de $75.00 mediante cheque.

3. Dos días más tarde la querellante llamó a las oficinas del querellado indicando que se había enterado de que no necesitaban representación profesional en su caso y señalando que habría de detener el pago del cheque ("stop payment"), lo cual en efecto hizo.

4. Varios días más tarde se suscitó un incidente en las inmediaciones de las oficinas de los querellados en el que la querellante, haciéndose pasar por una persona distinta, trató de obtener la devolución de la póliza de seguro que había entregado. Mediante la intervención de una tercera persona se retiró la querellante del lugar.

5. Luego, en una ocasión posterior, la querellante conversó con la querellada Vanessa Vergne Torres relacionado con la devolución de su póliza, y ésta le pidió que pasara personalmente a recogerla y firmar el recibo correspondiente.

6. La querellante no ha pasado a recoger el documento según requerido.

7. *El Comisionado considera que este caso no se probó en contra del querellado Álvarez Meléndez.*

### Caso Número IV

1. El querellado Álvarez Meléndez fue contratado por la señorita María Ivette Ortiz para representarla en una acción de daños y perjuicios, a consecuencia de un accidente automovilístico, pactándose honorarios contingentes en la suma de 33%. Con posterioridad a la radicación de la demanda, el querellado le requirió y obtuvo de la querellante el pago de $200.00 para gastos. La comunicación entre abogado y cliente se producía únicamente a iniciativa de la querellante. Luego de pagar la suma de $200.00 la querellante no supo más del querellado.

2. Luego de quejarse al [P]rocurador [G]eneral, la querellante fue al Tribunal donde se hallaba el caso radicado y se percató de que éste había sido archivado por inactividad y luego reabierto a instancias del querellado, a quien se impuso una sanción de $50.00. El pago de esta sanción coincide con el requerimiento a la querellante de los $200.00 antes mencionados.

3. Luego de reabierto el caso, el querellado vuelve a abandonar el mismo, viéndose forzada la querellante a obtener nueva representación, lo que hizo, para continuar con su reclamación judicial.

4. Luego de la intervención de Procurador General, y hallándose en trámite la presente querella, el querellado devolvió a la querellante los $200.00 mediante giro bancario fechado 7 de noviembre de 1991.

5. *El Comisionado considera probado este caso.*

### Caso Número V

1. La querellante María Vega Paz contrató con el querellado Álvarez Meléndez su representación en un pleito de custodia y

reclamación de alimentos. Se pactaron honorarios en la suma de $300.00, de los cuales la querellante adelantó $200.00.

2. El querellado Álvarez Meléndez abandonó la representación de la querellante, según se comprueba con la Minuta del día 14 de enero de 1987 en el caso civil número RF79-4007 del Tribunal Superior, Sala de Bayamón, donde se indica que la querellante concurrió sola al Tribunal mientras que su exesposo estaba representado por abogado y se llegaron a determinados acuerdos entre las partes, que el Tribunal finalmente aprobó.

3. El querellado devolvió el expediente del caso a la querellante, aunque no así los $200.00 adelantados, los que finalmente fueron devueltos el 7 de noviembre de 1991 luego de radicada esta querella y de estar el caso en trámite ante el Tribunal Supremo.

4. *El Comisionado considera probado este caso.*

C. *Informe de Conducta Profesional AB-89-37*
*Caso Número I*

1. La querellada Vanessa Vergne Torres fue contratada por la señora María B. Figueroa para que la representara en un divorcio. La querellante le indicó que su esposo estaba dispuesto a divorciarse pero no a comparecer al Tribunal en persona. Posteriormente la querellada se enteró de que la razón era que el esposo era buscado por las autoridades policíacas.

2. Se preparó la demanda y se envió un emplazador con una contestación aceptando los hechos, a fin de proceder en forma no contenciosa y, al no localizarse al esposo de la querellante, se comunica la querellada con ésta para indicarle de la necesidad de publicar edictos. Esto conllevaba mayores costos. La querellante no estuvo de acuerdo en satisfacer los mismos, insistiendo en que se completara el trámite por la suma satisfecha de $100.00.

3. La querellada no estuvo de acuerdo con esto, indicándole a su cliente que fuera a recoger su expediente, pero ésta no lo ha hecho. Después de esto, la oficina de la querellada localizada en Summit Hills, donde la querellante contrató sus servicios, fue cerrada de modo permanente.

4. No ha sido explicado de forma alguna por qué no se envió o intentó enviar el expediente a la dirección de la querellante, que se supone que obre en el mismo.

5. A preguntas del Comisionado, la querellada manifestó que ni remotamente había contemplado la posibilidad de la complicación surgida de tener que publicar edictos, con el au-

mento en costos correspondientes, al momento de contratar sus servicios con la querellante.

6. *El Comisionado considera probado este caso en el sentido de que la querellada tenía la obligación de completar el trámite del divorcio de la querellante, lo cual no hizo cuando ésta se negó a renegociar el costo de su representación.*

### Caso Número II

1. La querellada contrató, mediante un corredor de bienes raíces, la preparación de una escritura de compraventa mediante la cual una persona norteamericana vendía al querellante, Jacinto Ruiz Candelaria, una propiedad inmueble. El trabajo conllevaba gestiones ante el Departamento de Hacienda, la protocolización e inscripción de un pagaré otorgado en el extranjero, la preparación de instancias, el otorgamiento de la escritura de compraventa y su ulterior presentación e inscripción en el Registro. La presentación e inscripción se contrató con el querellante Ruiz Candelaria, para lo cual este pagó la suma de $222.00.

2. Los gastos de los otros trámites, inclusive los de otorgación de la escritura de compraventa, corrían de parte del vendedor.

3. Al mudar las oficinas de los querellados, como ya se ha indicado previamente, *se extravió la instancia* y ello impidió la presentación de la escritura de compraventa en el Registro según pactado y acordado con el querellante.

4. La querellada no desplegó la diligencia necesaria para la localización de dicho documento al tiempo.

5. Finalmente, la escritura de compraventa fue presentada al Registro de la Propiedad de Caguas el día que se celebraba la primera vista evidenciaria en este caso, o sea, el 15 de enero de 1992.

6. *El Comisionado considera probado este caso.*

En atención a las determinaciones generales y particulares que previamente se consignan, el Comisionado considera probados los cuatro cargos imputados en la querella por el Procurador General de Puerto Rico contra los letrados Vanessa Vergne Torres y Manuel Álvarez Meléndez. (Énfasis suplido y en original.) Informe del Comisionado Especial de 19 de abril de 1994, pags. 5–16.[6]

---

[6] Por conducto del Comisionado Especial, su informe fue notificado a las partes el 20 de abril de 1994.

Transcurrido en exceso el término de la Regla 13(1) del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. I-A, para las partes ofrecer sus comentarios u objeciones, el

## III

■ Coincidimos plenamente con el Comisionado Especial, licenciado Maldonado Casillas, en cuanto a que los cuatro (4) cargos fueron probados. Ciertamente, los querellados Vergne Torres y Álvarez Meléndez infringieron los términos y espíritu de los Cánones 18, 19 y 38 de Ética Profesional, *supra*, que obligan a todo abogado ejercitar celo, cuidado y puntualidad en su gestión profesional, mantener al cliente informado y desempeñarse al grado de más alta capacidad, dedicación, lealtad y honradez.

■ La abogacía no puede practicarse de ese modo; tampoco diluirse la responsabilidad al extremo de no aclarar con cuál de los cónyuges abogados contrataban los clientes. Véanse: *In re Rodríguez Mercado*, 133 D.P.R. 208 (1993); *In re Pérez Santiago*, 131 D.P.R. 676 (1992); *In re Castro Mesa et al.*, 131 D.P.R. 1037 (1992); *In re Sánchez Rodríguez*, 123 D.P.R. 876 (1989); *In re Siverio Orta*, 117 D.P.R. 14 (1986); *In re Rosario*, 116 D.P.R. 162 (1985), y casos allí citados No albergamos duda de que la lamentable situación familiar —padecimiento de su hijo y endeble salud de la madre de la querellada Vergne Torres— fueron los factores que contribuyeron activamente a que ambos descuidaran sus deberes profesionales y prestaran tan pobres servicios a sus clientes, aun cuando éstos le satisficieron los honorarios exigidos.

Según indicado, el licenciado Álvarez Meléndez fue suspendido indefinidamente de la abogacía el 13 de diciembre de 1991 (Caso Núm. MC-91-11). Dicho decreto se fundamentó en el planteamiento siguiente:

Independientemente de los méritos de las quejas presentadas en contra de un abogado, él tiene la obligación ineludible de responder sin demora a los requerimientos de este Tribunal. Consideramos que "la indebida, irrazonable e inexcusable tar-

caso quedó sometido.

danza del querellado en formular su contestación a la querella es indicativa de una falta de respeto hacia los procedimientos de este Tribunal". *In re Díaz García*, 104 D.P.R. 171, 174 (1975). La naturaleza y la importancia de sus funciones, reclama del abogado una observancia estricta de las órdenes de los tribunales y la voluntaria desatención de este tipo de comunicación socava nuestra función reguladora de la profesión.

También, inicialmente la licenciada Vergne Torres fue suspendida indefinidamente del ejercicio de la notaría por diversas deficiencias notariales, incluso el omitir cancelar los Sellos de Rentas Internas por valor de quinientos cincuenta y un dólares ($551) en treinta y cuatro (34) escrituras. *In re Vergne Torres*, 121 D.P.R. 500 (1988).

Después, el 16 de noviembre de 1993, fue suspendida indefinidamente del ejercicio de la abogacía mediante una opinión *per curiam* por ignorar nuestros requerimientos en cuanto a una petición del Colegio de Abogados para solicitar su suspensión por no pagar la cuota anual.

■ Estas suspensiones previas no tornan en académicas las querellas ni su adjudicación. Distinta a la situación de los informes del Colegio de Abogados y del Procurador General de Puerto Rico, estamos ante la etapa final de un proceso de jurisdicción original disciplinario iniciado que exigió una vista evidenciaria ante un Comisionado Especial, contiene sus determinaciones fácticas y requiere que lo evaluemos, por ende, no debemos posponer la decisión final. Dicho de otro modo, no estamos ante un mero "Informe" del Procurador General o del Colegio, sino uno adjudicativo de hechos ya probados después de una vista evidenciaria que requiere su culminación. Unir el Informe del Comisionado a los expedientes personales de los querellados, sin su adjudicación definitiva por este Tribunal, representaría una pérdida de valiosos recursos y carecería de valor institucional decisorio alguno.

Con vista a esos antecedentes, la naturaleza de los cargos probados, el patrón repetitivo de conducta distante a la recta ética profesional, las circunstancias familiares que la

motivaron, las medidas tomadas por los querellados para resolver, aunque tardíamente, los problemas causados a los clientes, y el tiempo de suspensión previo, como sanciones, procede extender las suspensiones decretadas contra Álvarez Meléndez y Vergne Torres ahora por el término *mínimo adicional* de seis (6) meses. Reiteramos, que la *separación* de la abogacía de Vergne Torres será hasta tanto acredite su disposición de cumplir rigurosamente con nuestras órdenes y con las disposiciones de la Ley Núm. 43 de 14 de mayo de 1932 (4 L.P.R.A. sec. 771 *et seq.)* —en cuanto a la cuota anual Colegio de Abogados— y dispongamos lo que proceda en derecho; además, aclaramos que ella queda excluida *permanentemente* del notariado.

*Se dictará la sentencia correspondiente.*

La Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Hernández Denton disintieron por entender que, en las circunstancias del caso, el Tribunal debió abstenerse de adjudicar finalmente las querellas y, en su defecto, debió ordenar que el Informe del Comisionado Especial se uniera a los expedientes personales de los querellados, abogados previamente suspendidos. El Juez Asociado Señor Rebollo López no intervino.