

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: | 2011 TSPR 53 |
| | 181 DPR ____ |
| Benjamín Guzmán Guzmán | |

Número del Caso:        CP- 2008 - 1

Fecha:     31 de marzo        de 2011

Abogad o   de la      Querellad     o:

Lcd  o.   Arturo Guzmán Guzmán

Oficina del Procurador General

Lcda. Lesy A. Irizarry Pagán
Procuradora General Auxiliar

Lcda. Minnie H. Rodríguez López
Procuradora General Auxiliar

Materia:      Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal    . Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Benjamín Guzmán Guzmán          CP-2008-1        Conducta
                                                 Profesional

PER CURIAM

En San Juan, Puerto Rico, a 31 de marzo de 2011.

Nos corresponde atender una querella contra un abogado-notario a quien se le imputa haber incurrido en violaciones a los Cánones 9, 17, 18 y 26 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 9, C. 17, C. 18 y C. 26.

Por entender que las actuaciones del querellado se apartaron de las normas éticas que rigen el ejercicio de la profesión, censuramos enérgicamente al Lcdo. Benjamín Guzmán Guzmán por su conducta.

I.

El Lcdo. Benjamín Guzmán Guzmán, el querellado en este caso, fue admitido al ejercicio de la abogacía y la notaría en Puerto Rico el 30 de enero de 2002 y 28 de febrero de 2002, respectivamente. El Lcdo. Guzmán Guzmán fungió como representante legal del Sr. Jorge Luis Ríos Rosario en el caso, Jorge Luis Ríos Rosario v. Raquel Ortiz Alicea y Elianette Rivera, Civil Núm. BCU2006-0007, sobre una petición de Habeas Corpus, cuya Sentencia dio origen al procedimiento disciplinario que hoy atendemos. Entendió el foro primario, y así lo hizo constar en la Sentencia del caso antes mencionado, que el Lcdo. Guzmán Guzmán faltó a los Cánones del Código de Ética Profesional cuando hizo alegaciones falsas, a base de lo que le informó su cliente, en una petición de Habeas Corpus. Veamos un resumen de los hechos que dieron lugar al procedimiento disciplinario que hoy nos ocupa.

A

Según surge de la Sentencia que nos fue referida por el Tribunal de Primera Instancia, el 24 de octubre de 2005 la Sra. Raquel Ortiz presentó una querella contra su hija, la Sra. Elianette Rivera, al amparo del Subcapítulo V de la Ley Núm. 177 de 1 de agosto de 2003, conocida como Ley para el bienestar y la protección integral de la niñez, 8 L.P.R.A. sec. 448,[1] por alegada agresión a uno de sus

---

[1] Raquel Ortiz Alicea vs. Elianette Rivera Ortiz, número civil, BABPN200500032, ante el Tribunal de Primera Instancia, Sala Municipal de Aibonito.

propios hijos.    Dos de los hijos de la Sra. Elianette Rivera eran de su entonces esposo, el Sr. Samuel Rodríguez Maldonado, y otra menor reconocida sólo por ella.    El 17 de noviembre de 2005, el Tribunal Municipal de Aibonito emitió una orden ex parte para protección de los tres hijos de la Sra. Elianette Rivera y entregó la custodia de los menores a la Sra. Raquel Ortiz hasta que se celebrara la vista correspondiente. Para esa fecha, la Sra. Elianette Rivera y el Sr. Jorge Luis Ríos Rosario convivían.    Así las cosas, el Tribunal Municipal citó al señor Ríos Rosado para la vista del caso Raquel Ortiz Alicea v. Elianette Rivera Ortiz, a celebrarse el 30 de noviembre de 2005.    En dicha vista el Tribunal Municipal emitió una segunda orden de protección en la que le otorgó la custodia provisional a la Sra. Raquel Ortiz con vigencia inmediata y hasta el 1 de marzo de 2006.    Respecto al señor Ríos Rosario, el Tribunal Municipal dispuso que "podrá visitar a los menores".    Es importante señalar que el señor Ríos Rosario no es el padre biológico de la menor sino que tras convivir con la Sra. Elianette Rivera y velar por el cuidado de la menor, decidió reconocerla voluntariamente como su hija en el Registro Demográfico.    Esto, luego de que se suscitó el incidente de maltrato por el cual la Sra. Raquel Ortiz presentó la denuncia.    Con posterioridad a estos eventos, la Sra. Elianette Rivera y el señor Ríos Rosario se separaron.

Así, sin vencerse aún la vigencia de la Orden de Protección que otorgó la custodia temporal de los menores a

la Sra. Raquel Ortiz hasta el 1 de marzo de 2006, el señor Ríos Rosario contrató los servicios del Lcdo. Benjamín Guzmán Guzmán, el querellado en este caso, y presentó una petición de *Habeas Corpus* (Petición) el 14 de febrero de 2006 ante el Tribunal de Primera Instancia, Sala Superior de Aibonito, en la que solicitó que se le devolviera la custodia de su hija. Entre las alegaciones más sobresalientes de la Petición se encuentran las siguientes:

> Se entregó custodia temporera de todos los menores del hogar entregándolos a la abuela materna y quejosa Raquel Ortiz Alicea sin citar ni oír al peticionario quien es el padre biológico de la menor de dos años. (Subrayado nuestro.)

> La orden de protección emitida sin velar por los intereses de parte indispensable adolece de otorga[r] tan siquiera relaciones paterno filiales efectivas al Peticionario de autos pese a este no ser convicto de delito alguno y/o acusación de maltrato, abandono. (Subrayado nuestro.)

> El Peticionario a quien se le removió ilegalmente la custodia y patria potestad de la menor en cuestión se le han violentado sus derechos constitucionales de debido proceso de ley al no haber sido intervenido por autoridad alguna y tan siquiera haber sido entrevistado por el Departamento de la Familia quien tienen jurisdicción en este tipo de casos. (Subrayado nuestro.)

> No existe orden de protección expedida válidamente por tribunal de Derecho y/o agencia administrativa que prive al peticionario de la patria potestad y custodia de su hija menor de edad… (Énfasis en el original.)

Por lo anterior, el señor Ríos Rosario entendió que se le violaron sus derechos constitucionales y legales. La Petición fue firmada por el Lcdo. Guzmán Guzmán en calidad de abogado, y jurada, además, por el señor Ríos Rosario.

El 18 de abril de 2006, el Hon. Pedro Juan Pérez Nieves (Juez Pérez Nieves), Juez Superior del Tribunal de Primera Instancia, Sala Superior de Aibonito, dictó Sentencia sobre la Petición antes mencionada en la que determinó que, a tenor con la prueba que se presentó ante su consideración, el mejor bienestar de la menor estaba en compañía de su padre legal, el señor Ríos Rosario. No obstante lo anterior, el Juez Pérez Nieves expresó en la Sentencia lo siguiente:

> No podemos pasar por alto que el peticionario mintió al alegar que era el padre biológico de la menor. Aunque este no es un hecho determinante en cuanto a la realidad filiatoria y el bienestar de la menor, no se trata de un hecho incidental o insignificante, de forma que podamos despacharlo como una inadvertencia inconsecuente del peticionario o su abogado". El haber alegado bajo juramento que siendo el padre biológico de la menor había sido privado de la custodia ilegalmente (párrafo 6 de la petición), le abrió las puertas del remedio extraordinario del "habeas corpus" con la celebración de una vista en un término perentorio.[2] (Subrayado nuestro.)

El Juez Pérez Nieves formuló sus conclusiones luego de que, entre otras consideraciones, tomó conocimiento judicial del expediente del caso Raquel Ortiz Alicea v. Elianette Rivera Ortiz, visto en la Sala Municipal de Aibonito. El Juez Pérez Nieves señaló que del mencionado expediente surge que luego de que el Tribunal emitió una orden ex parte y señaló vista para el 30 de noviembre de 2005, el Sr. Jorge Luis Ríos Rosario fue citado a dicha

---

[2] Sentencia sobre *habeas corpus* emitida el 18 de abril de 2006, por el Juez Pedro Juan Pérez Nieves del Tribunal de Primera Instancia, Sala Superior de Aibonito, pág. 5.

vista habiéndose diligenciado la citación el 23 de noviembre de 2005 y que ese mismo día, el señor Ríos Rosario presentó una moción alegando que la Sra. Raquel Ortiz no le dejaba ver a su hija y que ésta estaba mejor en su compañía, por lo que el Tribunal le ordenó comparecer a la vista y ordenó citar a un funcionario del Departamento de la Familia. Por lo anterior, el Juez Pérez Nieves entendió que al señor Ríos Rosario sí se le reconoció la oportunidad de ser oído y no fue privado ilegalmente de la custodia de su hija, como alegó en la petición de *Habeas Corpus*.

Luego de que el Juez Pérez Nieves repudió el proceder del señor Ríos Rosario y refirió copia de la Sentencia a Fiscalía para la investigación correspondiente, señaló acerca del Lcdo. Benjamín Guzmán Guzmán que éste faltó a los Cánones 9 y 17 de los del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 9 y C. 17. En resumen, la Sentencia señala que el abogado tenía la obligación de cerciorarse de la veracidad de los hechos que su cliente le informó pues a base de ello redactaría, y de hecho redactó, la petición jurada de *Habeas Corpus* que presentó ante el Tribunal de Primera Instancia. El foro primario entendió que el abogado "tenía la obligación adicional de advertir a su cliente sobre la importancia del juramento y sus consecuencias",[3] esto con el propósito de que el cliente

---

[3] Sentencia sobre *Habeas Corpus* emitida el 18 de abril de 2006, por el Juez Pedro Juan Pérez Nieves del Tribunal de Primera Instancia, Sala Superior de Aibonito, pág. 7.

leyera con cuidado el escrito y pudiese corregir cualquier parte que no fuese cierta. Opinó el Tribunal de Primera Instancia que era inaceptable que el Lcdo. Guzmán Guzmán le atribuyera a dicho Tribunal haber adjudicado la custodia de la menor sin citar al señor Ríos Rosario sin que antes verificara la veracidad de ese hecho, el cual era medular para presentar el *Habeas Corpus*. Juzgó, además, que al incurrir en dicha conducta el abogado indujo a error al Tribunal y atacó injustificadamente los procesos celebrados en la Sala Municipal.[4] Así las cosas, el Tribunal de Primera Instancia refirió a este Tribunal la Sentencia emitida por el Juez Pérez Nieves para que evaluáramos una posible violación a los Cánones de Ética por parte del Lcdo. Benjamín Guzmán Guzmán.

B

El 1 de septiembre de 2006, este Tribunal emitió una Resolución en la que refirió este asunto al Procurador General para su evaluación y elaboración del informe correspondiente.[5] Luego de varios trámites procesales, el 21 de diciembre de 2006, el Procurador General sometió el informe requerido por este Tribunal. En el mencionado informe, el Procurador General hizo referencia a un escrito que presentó el querellado ante el Departamento de Justicia, Oficina del Procurador General, en reacción a la imputación

---

[4] Íd. en la pág. 8

[5] Sala de verano integrada por el Juez Presidente señor Hernández Denton, el Juez Asociado señor Fuster Berlingeri y la Jueza Asociada Fiol Matta.

de la posible violación a los Cánones de Ética Profesional. En el mencionado escrito, el querellado indicó que nunca tuvo la intención de inducir a error al Tribunal de Primera Instancia y que realizó todas las alegaciones de buena fe e informadas, luego de evaluar todos los documentos e información a su alcance. Añadió que la recomendación de presentar una petición de *Habeas Corpus* que le hizo al señor Ríos Rosario fue en atención a los hechos que éste le había relatado, y que concluir que su cliente era el padre biológico de la menor fue una "conclusión cierta, prudente y razonable" pues en el certificado de nacimiento de la menor aparecía el señor Ríos Rosario como el padre de ésta. Insistió, en que no fue hasta que el abogado de la abuela materna de la menor realizó un contrainterrogatorio al señor Ríos Rosario que entonces se percató que su cliente no era el padre biológico de la menor sino el legal.

No obstante lo anterior, el Procurador General concluyó que los hechos expuestos ante su consideración apuntaban a una posible violación de los Cánones 9 sobre conducta del abogado ante los tribunales; Canon 17 sobre litigios injustificados; Canon 18 sobre la falta de diligencia y negligencia en el desempeño de la labor encomendada; y Canon 26 referente a los derechos y limitaciones en relación con los clientes.[6] Así las cosas, el 27 de abril de 2007, le ordenamos al Procurador General

---

[6] 4 L.P.R.A. AP. IX, C. 9, C. 17, C. 18 y C. 26.

que presentara la querella en el caso de epígrafe, según lo dispuesto en la Regla 14(e) de nuestro Reglamento.[7]

C

Por todo lo anterior, y en cumplimiento con la orden de este Tribunal, el 3 de enero de 2008, el Procurador General[8] presentó una querella disciplinaria contra el Lcdo. Guzmán Guzmán en la que le imputó 4 cargos.

En el **Primer Cargo** se le atribuyó al querellado haber incurrido en violación al Canon 9 de los de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 9, en relación con el deber de que todo abogado observe una conducta caracterizada por el mayor respeto, desalentando cualquier ataque injustificado contra el tribunal y sus componentes. Esto porque, según el Procurador General, el querellado preparó un escrito en el que atacó injustificadamente una actuación válida del Tribunal sin corroborar si lo alegado en dicho escrito era correcto. Señaló el Procurador General que de las alegaciones y de los documentos que se anejaron a la Petición presentada por el querellado, en representación del señor Ríos Rosario, se desprendía que éste no había sido despojado ilegalmente de la custodia de

---

[7] Una vez el Tribunal reciba la recomendación del Procurador General o del(de la) Director(a) de Inspección de Notarías, podrá ordenar el archivo y sobreseimiento de la queja, ordenar que se amplíe la investigación de la queja o someter el asunto a uno de sus Jueces para determinación de causa, quien informará su criterio y recomendaciones al Pleno. El Tribunal podrá imponer las sanciones que correspondan sin necesidad de trámites ulteriores cuando de la propia contestación surjan hechos que lo justifiquen. Luego de completado el trámite anterior, el Tribunal podrá ordenar al(a la) Procurador(a) General que presente la correspondiente querella. 4 L.P.R.A. Ap. XXI-A, R. 14 (e).

[8] Por conducto de la Procuradora General Auxiliar, Lesy A. Irizarry Pagán.

su hija. De igual forma, el Procurador General indicó que el querellado alegó en la petición de *Habeas Corpus* que la Orden de Protección dictada por el Tribunal Municipal no otorgaba relaciones paterno filiales, aun cuando de la propia orden de protección surge que a éste se le reconoció que podía visitar a todos los menores.[9]

En el **Segundo Cargo** se le atribuyó al Lcdo. Guzmán Guzmán la violación del Canon 17 de los de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 17, respecto a que la comparecencia de un abogado ante un tribunal debe equivaler a una afirmación sobre su honor de que en su opinión el caso de su cliente es uno digno de la sanción judicial. También, se le imputó la violación al mencionado canon 17, en cuanto a que la firma de un abogado en una alegación equivale a certificar que ha leído la alegación y que de acuerdo con su mejor conocimiento, información y creencia está bien fundada. Esto, pues, según el Procurador General entendió, el Lcdo. Guzmán Guzmán pudo inducir a error al Tribunal de Primera Instancia al incluir alegaciones en la Petición de *Habeas Corpus* que indicaban que el señor Ríos Rosario había sido despojado ilegalmente de la custodia de su hija cuando ni siquiera revisó la orden de protección previo a preparar la referida petición.

El **Tercer Cargo** señala que el querellado infringió el Canon 18 de los de Ética Profesional, 4 L.P.R.A. Ap. IX,

---

[9] Esto último fue malinterpretado por el Procurador General pues según surge de la petición de *Habeas Corpus* la alegación lo que decía era que en la Orden de Protección no se habían otorgado relaciones paterno filiales efectivas.

C.18, en relación con el deber del abogado de defender los intereses del cliente diligentemente por cuanto el querellado no corroboró la veracidad de los hechos que le relató su cliente a la hora de redactar la petición de *Habeas Corpus* presentada ante el Tribunal de Primera Instancia ni le explicó a su cliente el significado de los expresado en el escrito y/o las posibles consecuencias de proveer información falsa o incorrecta bajo su firma y juramento.

En el **Cuarto Cargo** el Procurador General le imputó al Lcdo. Guzmán Guzmán haber incurrido en una falta al Canon 26 los de Ética Profesional, 4 L.P.R.A. Ap. IX, C.26, al presentar un escrito de *Habeas Corpus* a base de alegaciones falsas, cuando lo propio era un pleito ordinario, pues es altamente impropio entablar pleitos viciosos e instigar falsas defensas y justificar dichos actos con el pretexto de que actuó siguiendo las instrucciones de su cliente.

Así las cosas, el 28 de febrero de 2008, notificada el 4 de marzo del mismo año, le ordenamos al querellado a contestar la querella presentada en su contra en un término de 15 días contado a partir la notificación de la Resolución.[10]   En cumplimiento con nuestra orden, el señor

---

[10] A tenor con la Regla 14(f) del Reglamento de este Tribunal, la cual dispone lo siguiente:

Una vez presentada la querella, el(la) Secretario(a) la entrará en el libro de presentaciones correspondiente, e inmediatamente expedirá un mandamiento al(a la) abogado(a) o notario(a) involucrado requiriéndole que conteste la misma dentro de los quince (15) días de su notificación. El(la) Alguacil hará la notificación de la querella y del mandamiento. Si no pudiere notificar personalmente al(a la) parte querellado(a), lo informará así al Tribunal, el cual podrá ordenar que se le notifique dejando los documentos en su oficina, durante horas regulares de trabajo, en un sobre con su debida dirección. De no

Guzmán Guzmán contestó la querella oportunamente. En la contestación, el querellado negó categóricamente que haya incurrido en violación de los Cánones 9, 17, 18 y 26 de los de Ética Profesional, 4 L.P.R.A. Ap. IX, C.9, C. 17, C. 18 y 26. En síntesis, alegó que el Procurador General le imputó la comisión de conducta impropia porque éste "no examinó el expediente confidencial sobre el asunto civil Raquel Ortiz Alicea vs. Elianette Rivera Ortiz, número BABPN200500032", el cual el querellado entendió que "ni siquiera el Procurador General por su cargo, tiene acceso al mismo conforme a las disposiciones que rigen la Ley [Núm.] 177, *supra*. Por esto, entendió el querellado que el Procurador General, al promover los cargos que aparecen en la querella en su contra, podía ser responsable de violar los Cánones de Ética Profesional que le imputó al primero. Añadió, que el Procurador General violó el Artículo II, Sección 1 de la Carta de Derechos de Nuestra Constitución porque en sus alegaciones hace referencia a la paternidad de la menor, cuestionando la dignidad de ésta. Asimismo, arguyó el querellado que los cargos que le imputó el Procurador General eran "infundad[o]s de su faz" pues entendió el querellado que el recurso de *Habeas Corpus* presentado era el adecuado.

_____

poderse notificar de acuerdo con lo antes dispuesto, el(la) Secretario(a) notificará por correo certificado con acuse de recibo a la dirección que obre en el Registro de Abogados(as) del Tribunal y tal notificación será suficiente para todos los efectos de este Reglamento, aunque la carta sea devuelta. 4 L.P.R.A. Ap. XXI-A, R. 14 (f).

D

Vista la contestación a la querella presentada por el Lcdo. Guzmán Guzmán, el 30 de abril de 2008 nombramos a la Hon. Eliadis Orsini Zayas, Ex Juez Superior del Tribunal de Primera Instancia como Comisionada Especial (Comisionada) para que recibiera la prueba y nos presentara el informe correspondiente conforme a la Regla 14 (h) del Reglamento de este Tribunal.[11] Luego de que la Comisionada analizó toda la prueba ante su consideración,[12] concluyó que el Lcdo. Guzmán Guzmán "preparó, presentó y fundamentó" un recurso de *Habeas Corpus* en el cual expuso alegaciones inconsistentes con la verdad, además de hacer referencia a omisiones -las cuales la Comisionada entendió que no se cometieron- por parte del Tribunal Municipal con el propósito de sustanciar el recurso presentado.

Entre las determinaciones de hechos que hizo la Comisionada indicó que en el curso de las vistas celebradas ante ella, el querellado aceptó que presentó el recurso de *Habeas Corpus* sin haber hecho averiguaciones ni estudios sobre los hechos relacionados a la versión que ofreció el

---

[11] "Se celebrará una vista para recibir la prueba sobre la querella. El Tribunal podrá ordenar que se celebre ante sí o, en el uso de su discreción podrá nombrar un(a) Comisionado(a) Especial para que reciba la prueba y rinda un informe con sus determinaciones de hecho". 4 L.P.R.A. Ap. XXI-A, R. 14(h).

[12] Según surge del informe que nos presentó la Comisionada, ésta basó sus conclusiones en los escritos del Procurador General; la reacción del querellado en relación con las imputaciones que se le hicieron, tal cual surgen de sus comparecencias por escrito; los incidentes ventilados ante la Comisionada según constan en la minuta del 12 de junio de 2008; la Resolución del 25 de septiembre de 2008 mediante la cual la Comisionada tomó conocimiento judicial sobre asuntos del expediente del caso BABFN2005-0032, el que revisó personalmente en Aibonito; y el expediente del caso de *Habeas Corpus*, BCU2006-0007, que se ordenó a elevar a este Tribunal; y la Sentencia que se emitió en este último, que fue la que dio origen a estos procedimientos.

cliente cuando se entrevistó con él. En cuanto a la alegación del querellado de que no tuvo acceso al expediente del caso Raquel Ortiz Alicea vs. Elianette Rivera Ortiz porque el mismo era confidencial, la Comisionada señaló que el querellado en sus escritos citó e hizo referencia al Artículo 27 de la Ley Núm. 177, *supra*, que dispone el procedimiento para solicitar el examen de ese tipo de expedientes luego de cumplir con ciertos requisitos. Añadió, que el querellado admitió que no hizo una petición por escrito al Tribunal para examinar el expediente y así preparar la Petición de *Habeas Corpus* de manera informada. Sin embargo, el querellado aceptó que examinó el expediente luego que se emitió la Sentencia en el caso de *Habeas Corpus*. Recalcó la Comisionada que examinó en su totalidad el expediente del caso, Raquel Ortiz Alicea vs. Elianette Rivera Ortiz, y que "por su examen se confirmó que las alegadas omisiones y alegada violación al debido proceso de ley del cliente, nunca ocurrieron". No obstante lo anterior, reconoció la Comisionada que el Procurador General falló en imputarle al querellado que en el *Habeas Corpus* el querellado alegó que el Tribunal no había otorgado relaciones paterno filiales cuando lo cierto es que el querellado lo que alegó fue que no se concedieron relaciones paterno filiales efectivas. Aun así, la Comisionada concluyó que ese hecho no desvirtuó la médula de las imputaciones que se hicieron en contra del querellado puesto que el escrito de *Habeas Corpus* "está lleno de argumentos y señalamientos que no se ajustan a la

verdad en relación con los incidentes y procedimientos celebrados previamente a la radicación del recurso de *Habeas Corpus*".[13]

Así, pues, la Comisionada recomendó que se le censure y reprenda con una enérgica advertencia de no volver a incurrir en este tipo de conducta pues, a pesar de lo reprochable de su conducta, no hubo mayores consecuencias por causa de sus acciones. En atención a lo anterior, el 8 de mayo de 2009, el querellado presentó un escrito de *Impugnación del informe de la Comisionada* en el que solicitó ser exonerado de todos los cargos que le fueron imputados por entender que no cometió la conducta alegada por el Juez Pérez Nieves, el Procurador General y la Comisionada. Con el beneficio del informe de la Comisionada y el escrito de impugnación del querellado, el 8 de junio de 2009, el caso quedó sometido ante nuestra consideración. Veamos la normativa aplicable a los hechos que hoy nos ocupan.

II

A

El Código de Ética Profesional contiene los principios éticos que rigen la profesión de la abogacía en

---

[13] Entre los argumentos del querellado que no se ajustan a la realidad de lo examinado en el expediente ante nuestra consideración, se encuentra el hecho de que el querellado alegó que su cliente no fue citado ni oído al proceso de protección para la menor, que la menor fue removida ilegalmente al señor Ríos Rosario y que no existía orden de protección expedida válidamente por tribunal alguno, entre otros argumentos.

Puerto Rico.[14]    Hemos expresado que el propósito de los Cánones de Ética es promover en los abogados un desempeño personal y profesional que vaya acorde con los más altos principios de conducta decorosa pues ese desempeño beneficia tanto a la profesión de la abogacía como a la ciudadanía en general, así como a las instituciones de justicia del País.[15] Así, el Canon 9 de los del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 9, exige que "todo abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto".  Dicho canon establece, además, que los abogados tienen la obligación de "desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales".

De otra parte, el Canon 17 de los del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 17, indica en lo pertinente que la comparecencia de un abogado ante un tribunal debe equivaler a "una afirmación de su honor de que en su opinión el caso de su cliente es uno digno de la sanción judicial".  Al mismo tiempo, el mencionado Canon 17 establece que cuando un abogado firma una alegación en un caso significa que éste ha leído la alegación y "de acuerdo con su mejor conocimiento, información y creencia está bien fundada".  Cónsono con lo anterior, hemos establecido que un abogado que radica una demanda o una petición al

---

[14] *In re*: Vélez Barlucea, 152 D.P.R. 298, 311 (2000).

[15] *In re*: González Cardona, res. el 2 de julio de 2010, 2010 T.S.P.R. 129.

Tribunal sin tener toda la información necesaria para poder determinar si existe, o no, una causa de acción, ciertamente falla en actuar con la máxima diligencia que impone el Código de Ética Profesional.[16]

Por otro lado, el Canon 18 de los del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 18, establece en lo pertinente lo siguiente:

> Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.
>
> Este deber de desempeñarse en forma capaz y diligente no significa que el abogado puede realizar cualquier acto que sea conveniente con el propósito de salir triunfante en las causas del cliente. La misión del abogado no le permite que en defensa de un cliente viole las leyes del país o cometa algún engaño. Por consiguiente, al sostener las causas del cliente, debe actuar dentro de los límites de la ley, teniendo en cuenta no sólo la letra de ésta, sino el espíritu y los propósitos que la informan. No debe tampoco ceder en el cumplimiento de su deber por temor a perder el favor judicial ni la estimación popular.

Acerca del antes citado Canon 18 hemos resuelto que los abogados tienen el deber de defender los intereses de sus clientes de forma diligente, "desplegando su conocimiento en la forma generalmente aceptada por los miembros de la clase togada como adecuada y responsable".[17] Constituye una falta al citado Canon 18 de los del Código de Ética Profesional cuando un abogado actúa con

---

[16] *In re*: Flores Ayffán, 170 D.P.R. 126, 133 (2007).

[17] *In re*: Grau Díaz, 154 D.P.R. 70, 76 (2001). (Citas omitidas.)

"indiferencia, desidia, despreocupación, inacción y displicencia en la tramitación de un caso".[18]

De la misma forma, el Canon 26 de los del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 26, señala en lo pertinente que es "altamente impropio" que un abogado aconseje transacciones o actos contrarios a la ley, entable pleitos viciosos o instigue falsas defensas "sin que pueda el abogado justificar dichos actos con el pretexto de que al actuar así, lo hizo siguiendo las instrucciones de su cliente". Esto, pues, según dispone el mencionado canon, "el abogado debe obedecer siempre su propia consciencia y no la de su cliente".

De otro lado, reiteradamente hemos dicho que al determinar la sanción disciplinaria que le impondremos a un abogado que incurrió en conducta impropia, evaluamos, entre otras cosas, "el previo historial del abogado; si se trata de una primera falta o de una conducta aislada; y si el abogado goza de buena reputación en la comunidad".[19] Así también, debemos considerar a la hora de imponer sanciones a los abogados los daños causados a terceros como consecuencia de sus actuaciones anti éticas sin que lo anterior se interprete como que se condonará conducta violatoria del Código de Ética Profesional que rige la profesión de la abogacía bajo el pretexto de que no hubo mayores consecuencias.

---

[18] Íd.

[19] *In re*: Reinaldo Arroyo Rivera, 148 D.P.R. 354, 361 (1999) citando a *In re*: *Roberto Soto*, 134 D.P.R. 772 (1993); *In re*: *Rivera Arvelo*, 132 D.P.R. 840 (1993); In re: Calderón Marero, 122 D.P.R. 840.

B

Finalmente, según dispone la Regla 14 (h) del Reglamento de este Tribunal, *supra*, le corresponde al Comisionado Especial designado celebrar una vista para recibir la prueba y rendir un informe con sus conclusiones de Derecho. Al desempeñar una función similar al juzgador de instancia, el Comisionado Especial se encuentra en mejor posición para aquilatar la prueba testifical y adjudicar credibilidad, por lo que sus determinaciones fácticas merecen nuestra mayor deferencia.[20] Por lo tanto, aunque este Tribunal no está obligado a aceptar el informe de la Comisionada Especial en un procedimiento disciplinario contra un abogado, y podemos adoptar, modificar o rechazar tal informe, de ordinario sostendremos sus determinaciones de hecho, salvo que se demuestre prejuicio, parcialidad o error manifiesto.[21]

III

Con el beneficio de la normativa antes expuesta, evaluamos los hechos que motivaron la presente querella para determinar si en efecto el Lcdo. Guzmán Guzmán cometió los cargos imputados.

---

[20] *In re*: Hernández Vázquez, res. el 30 de diciembre de 2010, 2011 T.S.P.R. 9, 180 D.P.R. __ (2011); *In re*: García Aguirre, res. el 2 de febrero de 2009, 2009 T.S.P.R. 21, 175 D.P.R. ___; *In re*: Morales Soto, 134 D.P.R. 1012, 1016 (1994).

[21] *In re*: Pagán Pagán, 171 D.P.R. 975 (2007); *In re*: Morell Corrada, Alcover García, 158 D.P.R. 791 (2003); *In re*: Soto López, 135 D.P.R. 642, 646 (1994).

A.

Como ya explicamos en detalle, los hechos que dieron lugar al procedimiento disciplinario que hoy atendemos tienen su origen en el momento en que el Lcdo. Benjamín Guzmán Guzmán fungió como representante legal del Sr. Jorge Luis Ríos Rosario en el caso <u>Jorge Luis Ríos Rosario v. Raquel Ortiz Alicea y Elianette Rivera</u>, Civil Núm. BCU2006-0007, sobre una petición de *Habeas Corpus*. En la Sentencia del mencionado caso el foro primario hizo constar que, a su entender, el Lcdo. Guzmán Guzmán faltó a los Cánones del Código de Ética Profesional cuando hizo alegaciones falsas en beneficio de su cliente en una petición de *Habeas Corpus* presentada ante el Tribunal de Primera Instancia, Sala Superior de Aibonito. En síntesis, el querellado alegó en la mencionada Petición que su cliente era el padre biológico de una menor y había sido despojado ilegalmente de la custodia de ésta a través de una orden de protección del Tribunal, la cual carecía de validez.

El Tribunal que atendió la referida Petición entendió que fue inducido a error pues tales alegaciones le abrieron las puertas al cliente del querellado para utilizar el remedio extraordinario del *Habeas Corpus* con la celebración de vista en un término perentorio en lugar de un pleito ordinario de custodia. Asimismo, el Juez de la Sala Superior que atendió la Petición reprochó las falsas acusaciones que se hicieron en la mencionada petición contra el proceder de la Sala Municipal que emitió las órdenes de protección, pues tales alegaciones fueron

infundadas. Por lo anterior, el Tribunal de Primera Instancia nos refirió la Sentencia emitida sobre la petición de *Habeas Corpus* donde se hizo constar las alegadas violaciones éticas del querellado. Tras varios evento procesales, se presentó una querella contra el Lcdo. Guzmán Guzmán en la que se le imputaron 4 cargos por alegadas violaciones a los Cánones 9, 17, 18 y 26 de los del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 9, C. 17, C. 18 y C. 26.

Como cuestión de umbral, surge de las determinaciones de hechos del Tribunal de Primera Instancia que cuando se expidió la primera orden de protección a favor de los menores -la cual fue promovida por la abuela materna de los menores en contra de la madre de éstos- el cliente del querellado aún no había reconocido a la menor como hija suya y, además, convivía con la madre de ésta. Para la segunda vista, en la que se otorgó otra orden de protección, el cliente del querellado había reconocido a la menor y ya no convivía con la madre de ésta, por lo que el Tribunal citó al cliente del querellado y le dio la oportunidad de ser oído. Aunque el Tribunal le otorgó nuevamente la custodia de la menor a la abuela materna de ésta por un tiempo determinado se le permitió al cliente del querellado visitar a la menor. Lo anterior -excepto la citación del cliente por parte del Tribunal- surge claramente de los documentos que el propio querellado unió a la petición de *Habeas Corpus* que presentó en el Tribunal. No obstante lo anterior, el querellado pudo fácilmente

haber averiguado si su cliente fue citado por el Tribunal para ser oído, o no, a base de preguntas a su cliente. También pudo haber solicitado examinar el expediente del caso que se vio ante la Sala Municipal sobre Orden de Protección de los menores tal como hizo luego que se emitiera la Sentencia que dio pie a este procedimiento disciplinario. Como consecuencia, el foro primario fue inducido a error pues las alegaciones plasmadas en la petición de *Habeas Corpus* le abrieron las puertas al cliente del querellado para utilizar un remedio extraordinario, que conlleva la celebración de vista en un término perentorio, cuando lo que correspondía era un pleito ordinario de custodia.

Lo anterior demuestra que el querellado no fue diligente en la preparación de la Petición de su cliente sin siquiera hacer averiguaciones mínimas. El querellado atacó al Tribunal infundadamente al decir que privó ilegalmente a su cliente de la custodia de su hija mediante orden de protección que carecía de validez cuando esa no era la realidad. Lo que es más, según surge del informe de la Comisionada, durante las vistas celebradas ante ésta el querellado admitió que redactó la referida Petición a base de lo que expuso su cliente, sin asegurarse de la verdad de lo aseverado por éste. A base de sus acciones, intencionadas o no, el querellado indujo a error al Tribunal que atendió la Petición de su cliente. El hecho de que el Tribunal falló a favor del cliente del querellado no quita que su conducta sea merecedora de ser señalada

como de hecho fue señalada y recriminada en la Sentencia emitida sobre la mencionada Petición de *Habeas Corpus*.

Los abogados tienen la responsabilidad de representar a sus clientes de forma diligente y responsable y deben asegurarse de la veracidad de los hechos a base de los cuales elaborarán el recurso correspondiente que en su día presentarán y defenderán ante los tribunales de justicia del País. Así, los abogados tienen la obligación de desalentar y evitar ataques injustificados en contra de los jueces o el buen orden de la administración de la justicia pues nada bueno augura a nuestra sociedad si perdemos el respeto hacia nuestras instituciones máxime cuando se trata de una institución que su razón de existir es hacer justicia. Es el deber de la clase togada estudiar y reflexionar de manera diligente sobre las disposiciones del Código de Ética Profesional que rige la profesión legal así como la jurisprudencia interpretativa, de manera que estén apercibidos de lo que son sus deberes para con la sociedad, sus clientes, compañeros y los tribunales de justicia; actuar contrario a esto abre las posibilidades a incumplimientos éticos, teniendo como resultado las sanciones correspondientes.

Luego de analizar los hechos que motivaron la querella que atendemos hoy, somos de la opinión de que el Lcdo. Benjamín Guzmán Guzmán se apartó de los principios éticos que rigen la profesión de la abogacía, y que todo abogado debe observar celosamente. Sin embargo, es importante señalar que esta es la primera vez que se sigue

un procedimiento disciplinario en contra del Lcdo. Guzmán Guzmán y que éste cuenta con una buena reputación entre sus conocidos.[22] Además, no hubo mayores consecuencias para con su representado y su causa de acción.

IV.

Por haber incurrido en la violación de los Cánones 9, 17, 18 y 26 de los del Código de Ética Profesional, censuramos enérgicamente la conducta del Lcdo. Benjamín Guzmán Guzmán y le apercibimos de que si incurre nuevamente en conducta contraria a los Cánones del Código de Ética Profesional que rigen la profesión de la abogacía será sancionado rigurosamente.

Se dictará Sentencia de conformidad.

---

[22] Según surge de cartas de recomendación incluidas en el expediente ante nuestra consideración.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Benjamín Guzmán Guzmán          CP-2008-1          Conducta
                                                   Profesional


SENTENCIA


En San Juan, Puerto Rico, a 31 de marzo de 2011.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se censura enérgicamente la conducta del Lcdo. Benjamín Guzmán Guzmán y se le apercibe de que si incurre nuevamente en conducta contraria a los Cánones del Código de Ética Profesional que rigen la profesión de la abogacía será sancionado rigurosamente.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo