*In re* CARLOS ROBERTO SOTO, querellado.

*Números:* CP-92-181          *Resueltos:* 7 de diciembre de 1993
AB-92-20

*Reina Colón de Rodríguez, Procuradora General Interina,* e *Yvonne Casanova Pelosi, Procuradora General Auxiliar,* abogadas de El Pueblo; *Pedro Ortiz Álvarez* y *Arturo Negrón García,* abogados del querellado; *Enrique Rivera Santana, Comisionado Especial.*

## I

PER CURIAM: El 2 de febrero de 1990 el Sr. Juan R. Mercado Reverón solicitó del Departamento de Justicia que se efectuara una investigación en relación con la conducta del querellado, Lcdo. Carlos Roberto Soto, en torno a la actuación de éste como abogado de Mercado Reverón en los casos *Pueblo de Puerto Rico v. Horacio Tavárez, Juan Mercado y Ángel Cancel,* Civil Núm. G86–577, G86–578, G86–579,

M86–259, M86–258, M86–250, Tribunal Superior, Sala de Aguadilla.

El 8 de marzo de 1992, la entonces Procuradora General, Anabelle Rodríguez, presentó un informe a este Tribunal recomendando la radicación de querella contra el licenciado Soto por violación a los Cánones 18, 21 y 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Mediante Resolución de 20 de marzo de 1992 ordenamos al Procurador General que procediera con la radicación de los cargos correspondientes.

El 31 de marzo de 1992 el Procurador General presentó la querella en la que se imputó al licenciado Soto los cargos siguientes:

## PRIMER CARGO

El abogado Carlos R. Soto violó las disposiciones del Canon 21 de Etica Profesional y la doctrina sentada en los casos *In Re: Carreras Rovira y Suárez Zayas*, 115 D.P.R. 778 (1984); *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172 (1985); *In Re Concepción Suárez*, 111 D.P.R. 486 (1981) al incurrir en conflicto de intereses al representar a co-acusados con defensas encontradas.

## SEGUNDO CARGO

El abogado Carlos R. Soto violó las disposiciones del Canon 18 y 35 de Etica Profesional y la doctrina sentada en los casos *In Re: Colton Fontán*, 91 JTS 24 e *In Re: Pagán Colón*, 100 D.P.R. 223 (1971) al indicarle a su cliente el Sr. Angel Cancel a alterar su testimonio en aquellos detalles que a juicio del abogado podía favorecer a dicho cliente. (Énfasis suplido.) Relación del caso y conclusiones de hecho, págs. 1–2.

El 12 de mayo de 1992 designamos al Lcdo. Enrique Rivera Santana como Comisionado Especial para que recibiera la prueba que las partes presentaran en apoyo de sus respectivas posiciones y nos rindiera un informe contentivo de sus determinaciones de hecho respecto a dicha prueba. Los hechos que dan origen a la presente querella se exponen a continuación.

## II

El licenciado Soto fue contratado por Horacio Tavárez y Ángel Cancel para que los representara en un caso criminal por los cargos de asesinato en primer grado y violación al Art. 4 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 412, que se les imputaba por hechos ocurridos el 28 de junio de 1986 en el Municipio de Isabela. El querellante Miguel Mercado también fue acusado por los mismos delitos. Sin embargo, al comienzo del trámite judicial (etapa de vista preliminar) estaba representado por el Lcdo. Roberto Rafols Dávila.

La vista preliminar se realizó el 20 de agosto de 1986 y se determinó causa probable contra los tres acusados. No obstante, es importante destacar que durante el curso de dicha vista el Fiscal Román le sugirió al licenciado Soto la posibilidad de una transacción por el delito de homicidio a favor de sus clientes. La transacción contemplaba, además, el archivo del caso contra Mercado. El licenciado Soto, aunque no representaba aún a Mercado, sabía que este último no había participado en los hechos que se le imputaban, ya que sus propios representados se lo habían hecho constar. Ambos admitían haber estado involucrados en la pelea que ocurrió el día de los hechos y que culminó con la muerte de Daniel Salas Rodríguez. En particular, Cancel admitió que fue él quien en medio de la pelea produjo las puñaladas que causaron la muerte a Salas.

Dos semanas después de celebrada la vista preliminar, Mercado se acercó al licenciado Soto para que también lo representara. Mercado le expresó al letrado su inconformidad con la representación profesional que le había prestado el licenciado Rafols. El licenciado Soto, aunque conocía que Mercado no había participado de los hechos que dieron lugar a la radicación de acusaciones contra los tres coacusados, no visualizó ningún conflicto de interés y acce-

dió a asumir la representación de Mercado en el trámite ante el Tribunal Superior.

Antes de comenzar el trámite en el Tribunal Superior falleció trágicamente el Fiscal Román. El Fiscal Luis A. Pérez Cabán asumió la representación del Ministerio Público. Este no accedió a honrar la propuesta transacción sugerida por el Fiscal Román. El licenciado Soto insistió en la transacción —que conllevaba el archivo del caso contra Mercado— y así lo hizo constar en moción por escrito que presentó el 5 de marzo de 1987, en la cual, además, anunció la defensa de coartada para Mercado. La alegada transacción no se realizó.

En la preparación para el juicio, el licenciado Soto se reunió varias veces con sus clientes. En una ocasión se reunió con Cancel y grabó su testimonio en una videocinta para evaluar la conveniencia de su declaración en el juicio. La grabación se tomó en la residencia de Horacio Tavárez el 28 de junio de 1986. El abogado sabía que Cancel tenía cierto tipo de retardación, pero aun así entendía las preguntas y respondía a éstas.[1] Cancel narra en la videocinta cómo fue que ocurrieron los hechos y la forma en que mató a Daniel Salas. Explicó que luego del forcejeo Daniel "lo cortó" (a Cancel) y Cancel tomó el puñal y comenzó a "puyar" a Daniel. Al declarar que lo hizo "ambas veces", el abogado lo corrige y le dice que fueron "muchas veces". Anejo I del Memorando para la discusión de la prueba, pág. 4.

A preguntarle al señor Cancel por dónde "puyó" a la víctima, éste contestó que por "ambos lados". El abogado le riposto: "c... no por el lado izquierdo." Anejo I del Memorando para la discusión de la prueba, pág. 3. Le recalca que fue por el lado derecho, que fue lo que apareció en el

---

[1] Cancel fue objeto de evaluaciones sicológicas por los sicólogos clínicos Dres. Edwin Mitchell y Carlos M. Ramírez Cancel (*Exhibit* A y B del querellado, objetadas por el Procurador General por el fundamento de ser irrelevante).

cadáver. El conocía este hecho, pues tenía copia del examen del patólogo fórense.

El abogado repasó la declaración con Cancel y éste, entonces, repitió que lo "puyó muchas veces"; que tenía miedo y que siguió "puyándolo". El abogado lo recriminó por decir que tenía miedo en ese momento cuando era él quien tenía el cuchillo en sus manos y le sugiere que afirme que "estaba ciego". Se lo repite varias veces. Más tarde en el interrogatorio, el letrado insiste en que diga que "primero tenía miedo" y que luego estaba "ciego" y que lo "puyó". Anejo I del Memorando para la discusión de la prueba, pág. 3.

Durante la declaración grabada, Cancel aseveró que Mercado Reverón no estaba en el lugar de los hechos durante la pelea; que llegó al lugar luego de que "Daniel (la víctima) se había ido", que "antes no estaba allí" y que Tavárez "sí estaba". Al afirmar que ese día por la tarde había tenido un problema con Daniel, el abogado le instruyó a que no dijera eso; le recordó que dijera que tenía que decir que estaba "ciego"; que tenía "coraje"; que temía "que lo matara"; que lo "puyó" muchas veces y "que estaba ciego". Anejo I del Memorando para la discusión de la prueba, pág. 3.

Al preguntarle el abogado cuánto tiempo duró la pelea, Cancel contestó que como media hora. El letrado le riposto diciendo "me c... en mi madre, si dices eso vamos todos presos ... tienes que decir poco tiempo, no seas p...". Le instruyó que dijera que fue "cosa rápida", como "dos minutos". Al final de la toma de la declaración, el abogado le preguntó al testigo (Cancel) si se había "sentado con el abogado a practicar" la declaración. Al Cancel responder afirmativamente, el abogado lo increpó diciéndole: "No, me c... en mi madre." Anejo I del Memorando para la discusión de la prueba, págs. 6–7.

Examinada la grabación de la declaración de Cancel, el licenciado Soto decidió que no lo iba a sentar a declarar en el juicio. Las razones para ello fueron la forma inconsis-

tente de declarar y el hecho de que Cancel había prestado una declaración jurada ante el Fiscal y podía entrar en contradicciones. Igual ocurría con el coacusado Tavárez. Este insistía en no declarar porque le tenía miedo a la silla de los testigos. Por eso, aunque ambos podían declarar que Mercado no estaba en el lugar de los hechos al momento de la pelea, decidió no sentarlos a declarar. Decidió buscar otros testigos para sostener la defensa de coartada que había notificado a favor de Mercado. Sólo pudo lograr que un testigo fuera a declarar sobre ese aspecto, ya que alegadamente los otros testigos potenciales expresaron miedo de ir a declarar.

El juicio se celebró ante la Hon. Juez Leticia Espada. Se presentaron seis testigos por el Ministerio Público. No se presentó prueba de defensa por los coacusados Cancel y Tavárez. El licenciado Soto concluyó que la prueba sólo establecía el delito de homicidio que equivalía a la transacción que había gestionado para estos acusados. En cuanto al coacusado Mercado, presentó la prueba de coartada, ya que los testigos del Pueblo ubicaban a Mercado en el lugar de los hechos. En ningún momento durante el juicio salió a relucir la existencia de la videocinta de Cancel. Los tres acusados fueron declarados culpables y convictos de homicidio e infracción al Art. 4 de la Ley de Armas de Puerto Rico, *supra*. El querellante fue sentenciado a 6 años de reclusión penitenciaria en probatoria por el delito grave, y a 6 meses por el delito menos grave. Los otros coacusados fueron sentenciados a 10 años de reclusión por el delito grave y a 6 meses por el menos grave.

Posterior a la sentencia, Mercado presentó una moción de nuevo juicio por derecho propio. Planteó en su escrito que había testigos que "sabían que él no se encontraba allí" y no lo ayudaron y, además, que hubo conflicto de interés de parte de su abogado. Esta moción fue declarada sin lugar. En dicha moción tampoco hizo alusión a la existen-

cia de la videocinta antes aludida. Aunque Mercado sabía de su existencia, aún no la había conseguido.

Posteriormente, Mercado remitió una comunicación escrita al entonces Secretario de Justicia, Lcdo. Héctor Rivera Cruz, en la cual solicitó que se investigara la posible representación legal conflictiva. Fue citado a declarar bajo juramento ante un fiscal de la División de Derechos Civiles del Departamento de Justicia. En esa ocasión entregó la videocinta, lo que dio lugar a la investigación y a la querella ante nuestra consideración.

## III

El Canon 21 del Código de Ética Profesional, *supra*, prohíbe la representación legal cuando existe alguna posibilidad de que el abogado incurra en conflicto de intereses. *Pueblo v. Padilla Flores*, 127 D.P.R. 698 (1991); *In re Belén Trujillo*, 126 D.P.R. 743 (1990); *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172 (1985); *In re Carreras Rovira y Suárez Zayas*, 115 D.P.R. 778 (1984); *In re Concepción Suárez*, 111 D.P.R. 486 (1981). Hemos resuelto que existe conflicto de intereses cuando hay alguna circunstancia que impide la representación libre y adecuada por parte del abogado y vulnera la lealtad absoluta que le debe todo abogado a su cliente. *In re Belén Trujillo*, supra. Véase, además, Nota, *Developments in the Law — Conflicts of Interest in the Legal Profession*, 94 (Num. 6) Harv. L. Rev. 1244 (1981). No obstante, para que entre en vigor la prohibición sobre conflicto de intereses se requiere la existencia de una relación abogado-cliente *dual* conflictiva. *García O'Neill v. Cruz*, 126 D.P.R. 518 (1990); *In re Concepción Suárez*, supra; *In re Añeses Peña*, 113 D.P.R. 756 (1983); *In re Roldán González*, 113 D.P.R. 238 (1982).

Aunque el citado Canon 21 no proscribe la representación simultánea de dos coacusados por un mismo abo-

gado, sí hemos reconocido el riesgo potencial que conlleva dicha representación en la medida en que incida sobre el derecho constitucional a una representación legal adecuada. *Pueblo v. Padilla*, supra; *Pueblo v. Gordon*, 113 D.P.R. 106 (1982).

En la jurisdicción federal se ha reconocido que existe conflicto de intereses si un abogado presenta prueba o argumentos que podrían beneficiar significativamente a un acusado y al mismo tiempo perjudicar a otro a quien también representa. Véanse: *Baty v. Balkcom*, 661 F.2d 391 (5to Cir. 1981); *Turnquest v. Wainwright*, 651 F.2d 331, 333 (5to Cir. 1981); *Foxworth v. Wainwright*, 516 F.2d 1072, 1076 (5to Cir. 1975).

Expuesto el derecho aplicable, procede considerar si el licenciado Soto incurrió en conflicto de intereses. El primer cargo imputa al querellado conflicto de interés en la representación simultánea de los coacusados Mercado, Tavárez y Cancel. Concluimos que sí, veamos por qué.

Nos encontramos ante el ejemplo más común de la relación abogado-cliente dual: la representación simultánea de varios coacusados. La circunstancia donde se hace más patente el conflicto de intereses la vemos cuando el licenciado Soto decide no sentar a declarar al coacusado Cancel, a pesar de que éste poseía información que exculpaba al coacusado Mercado. No podía sentarlo, dado que el hacerlo conllevaba el riesgo de que ese acusado perjudicara su defensa de homicidio y agravara su situación debido a su grado de incapacidad mental. Además, existía una declaración jurada previa y podía incurrir en contradicciones. Es en este momento que la representación libre y adecuada que el licenciado Soto debía a cada uno de sus clientes quedó vulnerada, ya que su juicio profesional independiente se vio afectado ante la disyuntiva de elegir entre uno y otro cliente. Véase J.S. Geer, *Representation of Multiple Criminal Defendants: Conflicts of Interest and the Professional Responsabilities of the Defense Attorney*, 62

(Núms. 1–3) Minn. L. Rev. 119 (1977–1978). Por un lado, el testimonio de Cancel promovería significativamente la defensa de coartada de Mercado, sin embargo, el mismo testimonio podría ser adverso a dicho testigo dado su grado de incapacidad y la existencia de una declaración jurada previa. La elección de un curso u otro de acción implicaba necesariamente vulnerar la representación libre y adecuada a la que se comprometió, ya que al hacerlo estaría obligado a *limitar* sus defensas y estrategias a aquellas que no perjudicasen a ninguno de sus representados. ·

## IV

En el segundo cargo se le imputa al licenciado Soto la violación de los Cánones 18 y 35 del Código de Ética Profesional, *supra*, al indicarle a Cancel que alterara su testimonio en aquellos detalles que, a juicio del abogado, podían favorecerle. El Canon 18, *supra*, establece el deber de todo abogado de desempeñarse en forma capaz y diligente. Sin embargo, el desempeño de este deber no puede ser vehículo para que en defensa del cliente viole la ley. Es por esta razón que el Canon 35, *supra*, dispone que todo abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit y otros documentos, y al presentar sus causas. Además, proscribe expresamente utilizar medios *inconsistentes con la verdad e inducir al juzgador a error a través de una falsa relación de hechos o mediante artificios*. Procede determinar si el querellado incurrió en la conducta imputada.

La única prueba admitida en evidencia con relación a este cargo es la videocinta que grabó el licenciado Soto para evaluar la conveniencia del testimonio de Cancel.

La transcripción aislada de porciones del interrogatorio realizado por el licenciado Soto a Cancel en la videocinta parecería indicar que el licenciado Soto inducía a mentir a su cliente. No obstante, el examen cuidadoso de toda la

videocinta no nos permite concluir que el querellado incurriese en la conducta imputada. Aunque no descartamos que la conducta del querellado está permeada de elementos que sugieren una tendencia a orientar a los testigos a mentir, la misma debe ser evaluada dentro de todo el contexto en que se desarrolla el interrogatorio, y tomando en cuenta el grado de retardación que Cancel posee. A base de estos indicadores, es concebible que el comportamiento del querellado estuvo principalmente motivado por el deseo de advertir al testigo de los riesgos de sus expresiones y la voluntad de prevenirlo contra preguntas que lesionaran su credibilidad, dada su incapacidad para coordinar sus ideas con claridad y precisión ante los hechos objetivos de la investigación del caso. Es cierto que algunas correcciones que el querellado hace a Cancel están acompañadas de un lenguage lamentable, pero esto no implica necesariamente una incitación a mentir.

Además, debemos tener en cuenta que dado que Cancel no testificó en el juicio, tampoco se configuró la falta de inducir a error al juzgador a través de una relación falsa de hechos. Con respecto a este cargo nos limitaremos, pues, a censurar la utilización de este tipo de lenguaje en el trato con los clientes. Los abogados deben mantener en todo momento una actitud respetuosa ante sus clientes, al igual que lo hacen con sus compañeros de profesión.

V

Al determinar la sanción disciplinaria que ha de imponerse a un abogado que ha incurrido en conducta impropia, acostumbramos considerar, entre otras cosas, el previo historial del abogado; si se trata de una primera falta o de una conducta aislada y si el abogado goza de buena reputación en la comunidad. *In re Bermúdez Rivera*,

123 D.P.R. 615 (1989); *In re Calderón Marrero*, 122 D.P.R. 557 (1988).

■   En ausencia de prueba desfavorable sobre la reputación del querellado y considerando que es su primera falta a los Cánones del Código de Ética Profesional, *resolvemos suspenderlo un año del ejercicio de la abogacía*.(²)

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Rebollo López "está conforme con las Partes I, II y III, pero disiente de las conclusiones a que se llega en la Parte IV de la ponencia y de la sanción de un año, la cual aumentaría, por lo menos, tres años". La Juez Asociada Señora Naveira de Rodón "está conforme con las Partes I, II y III, pero disiente de las Partes IV y V por entender que el examen cuidadoso de toda la videocinta refleja, precisamente, que el querellado incurrió en la conducta imputada en el segundo cargo. Véase *In re Colton Fontán*, 128 D.P.R. 1 (1991). El Juez Asociado Señor Negrón García se inhibió.

---

(²) La sanción por violación al Canon 21 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, varía de acuerdo con la gravedad de la falta y el perjuicio causado. A modo de ejemplo, en *In re Belén Trujillo*, 126 D.P.R. 743 (1990), suspendimos al licenciado Belén Trujillo por un año y seis meses por sostener relaciones profesionales simultáneas que contravinieron no sólo los intereses personales, sino también sus obligaciones con las distintas partes que representaba. En *In re Guzmán*, 80 D.P.R. 713 (1958), no obstante, se suspendió por seis meses, dado que existían atenuantes y el perjuicio causado, si alguno, fue menor.