ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| CARLOS M. SUÁREZ DÍAZ<br><br>Peticionario<br><br><br>v.<br><br><br>FRANCES M. ORTIZ FLORES<br><br>Recurrida | TA2026CE00073 | *Certiorari*,<br>procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br><br>Caso Núm.:<br>CN2025CV00234<br><br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Prats Palerm, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de enero de 2026.

Comparece Carlos M. Suárez Díaz ("señor Suárez Díaz" o "Peticionario") mediante *Certiorari* y nos solicita que revisemos la *Resolución* dictada el 2 de diciembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Carolina ("TPI"). En virtud del aludido dictamen, el TPI, a solicitud de parte, descalificó al representante legal del señor Suárez Díaz.

Por los fundamentos que proceden, se expide el auto solicitado y se *confirma* la determinación recurrida.

## I.

El 4 de junio de 2025, el señor Suárez Díaz, representado por la Lcda. Bernice Carmona Castro, presentó una *Demanda* sobre cobro de dinero en contra de su cónyuge, Frances M. Ortiz Flores ("señora Ortiz Flores" o "Recurrida"). Adujo que las partes contrajeron matrimonio, pactando separación absoluta de bienes mediante capitulaciones matrimoniales. Señaló que las partes se encontraban en un proceso de divorcio por ruptura irreparable. Alegó que, en un momento, transfirió $150,000.00 a la señora Ortiz Flores. Esbozó que, bajo sus instrucciones, la recurrida suscribió un contrato con la compañía Lincoln Financial. Sostuvo, a su vez, que inicialmente depositó la cantidad de

$150,000.00, pero que, posteriormente, el peticionario realizó aportaciones adicionales hasta completar la anualidad, totalizando $600,000.00. Arguyó que dichos fondos fueron colocados a nombre de la señora Ortiz Flores en calidad de testaferra, con el propósito de manejar las anualidades y proteger el patrimonio privativo de este. No obstante, alegó que la recurrida, sin su autorización ni consentimiento, dispuso de los fondos y se ha negado a devolver el saldo correspondiente. Por tanto, solicitó que se le ordene a la recurrida la devolución inmediata de los fondos.

El día siguiente, el Lcdo. Erick Morales Pérez radicó una *Moción en Solicitud a Unirse a la Representación Legal* del señor Suárez Díaz, la cual fue aceptada mediante *Orden* dictada el 12 de junio de 2025.

Tras varias instancias procesales, el 4 de agosto de 2025, la señora Ortiz Flores presentó una *Solicitud de Descalificación de Abogada de Demandante.* Expuso que, vigente el matrimonio entre las partes, otorgó un Testamento Abierto ante la Lcda. Bernice Carmona Castro. Razonó que, como resultado, la letrada estaba impedida de asumir la representación legal del señor Suárez Díaz.

A su vez, el 18 de agosto de 2025, la recurrida instó su *Contestación a Demanda y Reconvención.* En síntesis, mediante la reconvención presentada alegó que las capitulaciones matrimoniales adolecen de vicios de consentimiento. Añadió que, durante la vigencia del matrimonio, los cónyuges hicieron uso de los bienes y los administraron como si pertenecieran al caudal común. Siendo así, solicitó la liquidación de la presunta comunidad de bienes constituida entre las partes.

El 13 de septiembre de 2025, la Lcda. Carmona Castro notificó una *Moción Solicitando Permiso de Retirada de Representación al amparo de la Regla 5 del Reglamento Notarial de Puerto Rico,* la cual fue concedida por el foro de instancia. A su vez, el 14 de septiembre de 2025, el señor Suárez Díaz instó una *Moción Informativa (Sobre Continuidad de Representación Legal).* Relató que su co-representante, el Lcdo. Erick Morales Pérez, no ejerce la notaría desde el año 2011, razón por la cual no participa en funciones notariales. Añadió que los señalamientos de la recurrida estaban dirigidos exclusivamente a la Lcda.

Carmona Castro, por lo que cualquier incompatibilidad con la función dual de abogada-notaria era personal y no le afectaba al Lcdo. Morales Pérez. Expresó, además, que había sido orientado y no tenía reparos a la continuación de su representación legal por letrado.

En respuesta, el 26 de septiembre de 2025, la señora Ortiz Flores se opuso a que el Lcdo. Morales Pérez continuara con la representación legal del señor Suárez Díaz. Arguyó que, debido a que la Lcda. Carmona Castro y el Lcdo. Morales Pérez colaboraron en el pleito, se activó una presunción de información compartida en cuanto a los bienes objeto de liquidación. Siendo así, razonó que, como medida cautelar, procedía la descalificación del Lcdo. Morales Pérez.

El 2 de diciembre de 2025, el TPI dictaminó una *Resolución* en virtud de la cual ordenó la descalificación del Lcdo. Morales Pérez. Determinó que el Lcdo. Morales Pérez trabaja con la Lcda. Carmona Castro, quien podría tener información sobre los bienes que se van a liquidar. Dispuso que, por tanto, aplica una presunción de confidencias compartidas, la cual no fue rebatida. Particularizó que el señor Suárez Díaz no le informó al Tribunal si sus co-representante tomaron medidas para evitar la divulgación de información confidencial. Más aún, el foro de instancia señaló que el Lcdo. Morales Pérez no cuenta con un peritaje especializado en casos de familia o liquidación de bienes, que amerite considerar al evaluar la descalificación. Finalmente, destacó que los procedimientos se encuentran en una etapa inicial, por lo cual la descalificación no le causaría un perjuicio sustancial al señor Suárez Díaz o alguna dilación.

Inconforme, el 13 de diciembre de 2025, el peticionario radicó una *Moción de Reconsideración*, la cual fue denegada mediante *Resolución* emitida el 22 de diciembre de 2025, notificada el día siguiente. Insatisfecho aún, el 19 de enero de 2026, el señor Suárez Díaz acudió ante nos mediante *Certiorari*. El peticionario realizó los siguientes señalamientos de error:

> **ERRÓ EL TRIBUNAL AL DESCALIFICAR AL SUSCRIBIENTE ABOGADO, ERICK MORALES PÉREZ, FUNDAMENTÁNDOSE EN UNA PRESUNCIÓN MECÁNICA DE CONFIDENCIAS COMPARTIDAS, IGNORANDO COMPLETAMENTE LA DOCTRINA JURISPRUDENCIAL QUE ESTABLECE QUE LAS INCOMPATIBILIDADES NOTARIALES SON PERSONALES AL NOTARIO Y NO SE EXTIENDEN AUTOMÁTICAMENTE A**

**COLABORADORES OCASIONALES QUE NO FORMAN PARTE DE UNA ESTRUCTURA PERMANENTE DE BUFETE.**

**ERRÓ EL TRIBUNAL AL APLICAR LA DOCTRINA DE IMPUTACIÓN DE CONFIDENCIAS SIN EVALUAR SI EXISTE UNA "RELACIÓN ESTRUCTURAL PERMANENTE" ENTRE LOS ABOGADOS, TAL COMO LO EXIGE LA JURISPRUDENCIA DEL TRIBUNAL SUPREMO, PARTICULARMENTE JOB CONNECTION CENTER V. SUPERMERCADOS ECONO, INC., 185 D.P.R. 585 (2012).**

**ERRÓ EL TRIBUNAL AL NO CONSIDERAR MEDIDAS MENOS ONEROSAS QUE ASEGURARAN LA INTEGRIDAD DEL PROCESO JUDICIAL, TAL COMO LO REQUIERE LA LEY AL IMPONER UNA DESCALIFICACIÓN QUE ES UNA MEDIDA DRÁSTICA.**

El 26 de enero de 2025, la señora Ortiz Flores notificó su *Alegato en Oposición*. Perfeccionado el recurso y contando con el beneficio de la comparecencia de las partes, nos encontramos en posición de resolver.

**II.**

**-A-**

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia, se trata de un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *Rivera et als. v. Arcos Dorados,* 212 DPR 124 (2023); *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare, LLC*, 194 DPR 723, 728-729 (2016); véase, además, Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.; IG Builders et al v. BBVAPR*, 185 DPR 307, 337-338 (2012).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, delimita expresamente las instancias en las que este Tribunal de Apelaciones puede expedir los recursos de *certiorari* para revisar resoluciones y órdenes interlocutorias del foro de Instancia. *800 Ponce de León Corp. v. American International Insurance, supra*; *Scotiabank de Puerto Rico v. ZAF Corporation*, 202 DPR 478, 487 (2019). En lo pertinente, la referida regla dispone lo siguiente:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se

recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari, en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. 32 LPRA Ap. V, R. 52.1.

Aun cuando al amparo del precitado estatuto adquirimos jurisdicción sobre un recurso de *certiorari*, la expedición del auto y la adjudicación en sus méritos es un asunto discrecional. No obstante, tal discreción no opera en el abstracto. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). La Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari*, a saber:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para analizar el problema.
C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio, parcialidad o error manifiesto. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). En el ámbito jurídico la discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *SLG Zapata-*

*Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). La discreción se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. *Íd.* Por lo anterior, un adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *Umpierre Matos v. Juelle Albello,* 203 DPR 254, 275 (2019); *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

**-B-**

Los tribunales están facultados para descalificar a abogados que participan en un caso para prevenir una violación a cualquiera de los Cánones de Ética Profesional o para evitar actos disruptivos de los abogados durante el trámite de un pleito. *Meléndez v. Caribbean Int'l. News,* 151 DPR 649, 661-662 (2000). La descalificación procede cuando el abogado "incurr[e] en conducta que constituya un obstáculo para la sana administración de la justicia o infrinja sus deberes hacia el tribunal, sus representados(as) o sus compañeros(as) abogados(as)". Regla 9.3 de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 9.3.

La determinación de derecho del TPI, de descalificar a un abogado, es una decisión impregnada de un alto grado de discreción que tiene dicho foro en el manejo procesal de un caso. *Meléndez v. Caribbean Int'l. News, supra,* pág. 664; *Lluch v. España Service Sta.,* 117 DPR 729 (1986); *Valencia, Ex parte,* 116 DPR 909 (1986). En tal sentido, se revoca esta determinación si se demuestra que hubo un craso abuso de discreción, que el TPI actuó con prejuicio o parcialidad, que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, o que la intervención en esa etapa evitará un perjuicio sustancial. *Zorniak Air Servs. v. Cessna Aircraft Co.,* 132 DPR 170 (1992).

El Canon 21 del Código de Ética Profesional, 4 LPRA Ap. IX, dispone, en lo pertinente, que el abogado tiene para con su cliente un deber de lealtad completa. Como corolario, tal obligación conlleva, entre otras, no divulgar los secretos y confidencias que el cliente haya compartido durante el transcurso de sus representaciones pasadas y presentes. *Liquilux Gas Corporation v. Berríos,* 138 DPR 850 (1995); *Ex Parte Robles Sanabria,* 133 DPR 739 (1993). Ello, tiene

el propósito de garantizarle a todo cliente que las confidencias y secretos que compartió con su abogado no serán utilizados en su contra, en beneficio de una representación adversa, de un cliente simultáneo o posterior. *In re Carlos Roberto Soto*, 134 DPR 772 (1993); *Ex Parte Robles Sanabria, supra.*

Cuando es una parte quien solicita la descalificación de un abogado, el foro primario debe "hacer un análisis de la totalidad de las circunstancias", considerando los siguientes factores: "(i) si quien solicita la descalificación tiene legitimación activa para invocarla; (ii) la gravedad de la posible violación ética involucrada; (iii) la complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados implicados; (iv) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y (v) el propósito detrás de la descalificación, es decir, si la moción se está utilizando como mecanismo para dilatar los procedimientos". *Job Connection Center v. Sups. Econo*, 185 DPR 585, 597-598 (2012). Además, el Tribunal debe realizar un balance entre el efecto adverso de la representación y el derecho a un juicio justo e imparcial. *Íd.*, págs. 599-602.

**-C-**

El notario es el profesional del derecho que ejerce una función pública que consiste en recibir, interpretar y dar forma legal a la voluntad de las partes, dar fe de hechos, redactar los instrumentos adecuados a ese fin, conferirles autenticidad, conservar los originales de estos y expedir copias que den fe de su contenido, y cumplir con cualquier otra función delegada por ley. Art. 2 de la Ley Núm. 75 de 2 de julio de 1987, según enmendada, conocida como la *Ley Notarial de Puerto Rico*, 4 LPRA sec. 2002. Se ha establecido que "el notario puertorriqueño no es abogado de ninguno de los otorgantes, no representa a cliente alguno, representa a la fe pública, representa la ley para todas las partes". Exposición de Motivos de la Ley Notarial de Puerto Rico, *supra.*

La Regla 5 del Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV, R. 5, regula la función dual del profesional del derecho, como abogado y como notario.

*In re Alverio Sánchez,* 172 DPR 181, 190 (2007). En específico, la aludida regla dispone lo siguiente:

> La práctica de la profesión de la abogacía puede ser en algunas ocasiones incompatible con la práctica de la notaría.
>
> El notario autorizante de un documento público está impedido de actuar posteriormente como abogado de una de las partes otorgantes para exigir en un litigio contencioso las contraprestaciones a que se haya obligado cualquier otra parte en el documento otorgado ante él.
>
> El notario está impedido de representar como abogado a un cliente en la litigación contenciosa y, a la vez, servir de notario en el mismo caso por el posible conflicto de intereses o incompatibilidades que puedan dimanar de éste.
>
> [...]

Dicho de otra manera, los notarios están impedidos de representar a cualquiera de las partes otorgantes en un pleito posterior mediante el cual se reclamen las prestaciones contenidas en el documento otorgado ante ese notario. *In re Martínez Almodóvar,* 180 DPR 805, 826 (2011). Ello, tiene como propósito, entre otros, "proteger la apariencia profesional de los notarios y evitar que su conducta como depositario de la fe pública notarial sea maculada por escepticismos de impropiedad y desconfianza". *Íd.*

Como regla general, tal prohibición no se extiende a aquellos notarios o abogados que sean o hayan sido socios o compañeros de oficina del notario autorizante. Regla 5 del Reglamento Notarial, *supra.* A manera de excepción, no podrán representar a una parte otorgante cuando: (1) se impugne la validez de cualquiera de los acuerdos que surgen del documento; (2) se alegue que se omitieron acuerdos relativos al asunto objeto del documento; o (3) se cuestione la actuación del notario autorizante. *Íd.*

### III.

En el recurso que nos ocupa, el peticionario nos solicita que revisemos la *Resolución* en virtud de la cual el foro de instancia ordenó la descalificación del Lcdo. Morales Pérez. Reitera que las incompatibilidades notariales son personales y, por tanto, no se extienden a sus colaboradores. A su vez, arguye que no existe una "relación estructural permanente" entre los abogados. En cambio, sostiene que, de existir dicha relación, existían medidas menos onerosas

para asegurar la integridad de los procedimientos. Por este haber sido el proceder de la parte peticionaria, los errores serán discutidos de manera conjunta.

Tras un examen sosegado del expediente, concordamos con la determinación del foro de instancia. Conforme surge, la señora Ortiz Flores otorgó un Testamento Abierto, el 8 de junio de 2024, ante la Lcda. Carmona Castro. Posteriormente, la letrada, junto con el Lcdo. Morales Pérez, asumió la representación legal del señor Suárez Díaz en el pleito de divorcio, así como en el de epígrafe. Luego de la presentación de la *Demanda,* el caso de marras se tornó en uno altamente contencioso mediante la presentación de una *Reconvención* por parte de la señora Ortiz Flores. En virtud de la misma, la controversia se convirtió en una sobre liquidación de una aparente comunidad de bienes.

Ante preocupaciones levantadas por la señora Ortiz Flores, relacionadas a los bienes objeto del litigio, la Lcda. Carmona Castro solicitó ser relevada de la representación legal del señor Suárez Díaz. No obstante, el Lcdo. Morales Pérez permaneció como co-representante del peticionario. Así las cosas, la recurrida arguyó que procedía su descalificación, ya que el Lcdo. Morales Pérez, como compañero de la Lcda. Carmona Castro, pudo haber obtenido acceso a información privilegiada en cuanto a los bienes que se pretenden liquidar. Especificó, además, que, ante la ausencia de evidencia sobre medidas tomadas por los abogados para mantener la confidencialidad de la información, operaba una presunción de confidencias compartidas.

A pesar de lo alegado por la señora Ortiz Flores, el señor Suárez Díaz nunca expresó los métodos utilizados para evitar la divulgación de información confidencial. Indistintamente de que no exista una relación laboral definida entre los letrados, la realidad fáctica es que el Lcdo. Morales Pérez y la Lcda. Carmona Castro colaboraron desde el inicio de los procedimientos. Consecuentemente, se activó una presunción de confidencias compartidas, la cual no logró ser rebatida por el peticionario.

Por tanto, en un intento de prevenir un potencial conflicto de intereses, el foro de instancia ordenó la descalificación del Lcdo. Morales Pérez. Establecido

lo anterior, no intervendremos con la discreción empleada por el TPI. Destacamos, al igual que hizo el foro de instancia, que el caso se encuentra en una etapa temprana, por lo cual, la descalificación no representa una dilación o un perjuicio sustancial.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos constar en esta *Sentencia*, se expide el recurso de *certiorari* y se *confirma* la determinación recurrida. Se devuelve al TPI para la continuación de los procedimientos, conforme a lo aquí dispuesto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones